# THE BOARD OF COUNTY SCHOOL COMMISSIONERS OF CAROLINE COUNTY

*vs.*

## GEORGE W. MORRIS.

## SAME

*vs.*

## CLAYTON ROE.

*Public schools: district schools; consolidation of——. Powers of County School Commissioners, and of the State Board of Education: when courts have no jurisdiction.*

In a controversy or dispute involving merely the proper administration of the public school system, the courts have no power to interfere, and all such questions must be referred to and finally settled by the State Board of Education.       p. 403

Where purely legal questions are involved, the determination is for the court.                              p. 404

The provisions of section 43 of Article 77 of the Code, directing that there shall be one or more schools in every school district of each county kept open for ten months of each year, if possible, does not impose a mandatory and imperative duty upon the Board of County School Commissioners; something is left by the law to the judgment and discretion of the board.
                                          p. 404

The Board of Education has power to advise the County School Boards with respect to any consolidation of district schools, and to correct any erroneous action which the School Board may take in such matters.                     p. 404

This section 43 of Art. 77 of the Code is one involving the proper administration of the schools whose enforcement rests with the State Board of Education, and a mandamus should not be issued by a Circuit Court to compel the Board of County School Commissioners to keep open a school which they had resolved to consolidate with that of another district.

                                        pp. 402-404

The visitorial power conferred upon the State Board of Education by section 11 of Article 77 of the Code of 1912, is summary and exclusive.                     p. 402

*Decided June 24th, 1914.*

Two appeals from the Circuit Court of Caroline County. (Constable, C. J., and Adkins and Hopper, JJ.)

The facts are stated in the opinion of the Court.

The causes were argued together before Boyd, C. J., Burke, Thomas, Urner and Stockbridge, JJ.

*Reuben Garey* and *Frederick R. Owens,* for the appellants.

*T. Alan Goldsborough* and *Charles F. Harley,* for the appellees.

Burke, J., delivered the opinion of the Court.

This is an appeal by the Board of County School Commissioners of Caroline County from an order of the Circuit Court for that county directing a *writ of mandamus* to issue, commanding it to open for pupils on September 15th, 1913, and keep open, throughout the scholastic year as in previous years, and in the usual way the Boonsboro School in that

county.   The order appealed from was passed on October
13th, 1913.

The petition for the writ was filed by George W. Morris
of Caroline County.   It alleged that the appellant, claiming
to act under the power conferred upon it by section 25 of
Article 77 of the Code, had resolved to consolidate the Boons-
boro School with a school in the town of Ridgely in Caroline
County, and not to open the Boonsboro School for the schol-
astic year 1913.   The section of the Code, above referred to,
under which the appellant claimed the power to consolidate
the schools, is as follows:

"25. The Board of County School Commissioners
shall have the general supervision and control of all
the schools in their respective counties; they shall
build, repair and furnish school houses; they shall pur-
chase and distribute text books; they shall, after advis-
ing with the principal of the school to which the
teacher is to be appointed, appoint all assistants; they
shall have authority to consolidate schools when, in
their judgment, consolidation is practicable and desir-
able, and to arrange for and to pay charges of trans-
porting pupils to and from such schools, and shall
perform such other duties as may be necessary to
secure an efficient administration of the public school
system, subject to the provisions of this article."

The petition further alleged that the Boonsboro School had
been established for more than twenty years, was located in
a school house district established in accordance with Article
77, section 27 of the Code, and was the only school in that
school house district; that said school had always kept up
its student attendance average well above ten pupils, as
required by Article 77, section 48 of the Code; that it was
quite possible for said Boonsboro School to open on the 15th
of September, 1913, when the schools in Caroline County
would be opened, and to be kept open during the scholastic
year as other schools.   It further alleged that the patrons of
the Boonsboro School, of which the petitioner was one, were

opposed to its abandonment, and that there were no reasons for closing the school and depriving the people of said school house district of the convenient and satisfactory educational advantages that the said school had furnished for so many years and would satisfactorily furnish them if kept open; that no provision had been made for closed, warm wagons for conveyance to and from Ridgely school; that the pupils would not be taken up from and put down at their own door, but at various points, in some cases as much as a mile and a half from the home of the pupil; that no provision was made for the arrival of the wagon at the various points designated at any particular time so that the pupils would have to wait in the weather for the wagon to pass; that it would take from one hour to two hours for the wagon to make the trip one way; that the wagon would not leave Ridgely on the return trip until after four o'clock so that pupils in primary grades would have to wait from half past two in order to start home; that the appellant had approved section 24A of Chapter 173 of the Laws of Maryland, 1912, and appointed attendance officers for its enforcement as provided for by said Chapter 173.

The Court passed a *nisi* order upon the petition requiring the appellant to show cause why the writ should not be issued as prayed. The appellant demurred to the petition, and its demurrer being overruled it filed an answer. In the view we take of the case it is unnecessary to set forth fully the averments of the answer. It denied many of the allegations of the petition, but averred that the consolidation of the Boonsboro School, which it proposed to make, with a school in the town of Ridgely would furnish the patrons of the former school much greater educational advantages. It averred that, "it believes that under the law it has the right to do what it proposes to do in the premises, and that it would be greatly to the advantage of the pupils concerned if it be permitted to fully carry out what it proposes to do respecting this school." The petitioner demurred to the

answer.   The demurrer was sustained, and the order from which this appeal was taken was then passed.

Section 11, Article 77 of the Code provides that:

"The State Board of Education shall, to the best of their ability, cause the provisions of this Article to be carried into effect, and may, if necessary, institute legal proceedings for that purpose with the direction and advice of the Attorney-General * * * ; they shall explain the true intent and meaning of the law, and they shall decide without expense to the parties concerned all controversies and disputes that arise under it, and their decision shall be final."

One of the provisions of Article 77, which it is the duty of the State Board to cause to be carried into effect, is section 43 which reads as follows:

"In every school house district in each county, established as hereinafter provided, there shall be kept for ten months in each year, if possible, one or more schools, according to population, which shall be free to all white youths over six and under twenty-one years of age."

From the allegations of the petition it is obvious that the question involved in this case concerns the proper administration of the schools of Caroline County. In *Wiley* v. *School Commissioners,* 51 Md. 401, the power conferred upon State Board of Education by Section 11 of Article 77 was declared to be a "visitatorial power of the most comprehensive character," and one that is "in its nature summary and exclusive." JUDGE ALVEY, speaking for the Court in that case further said: "In delivering the judgment in *St. John's College* v. *Todingenton,* 1 Burr. 159, 200, LORD MANSFIELD said that 'the visitatorial power, if properly exercised, without expense or delay, is useful and convenient to colleges; and it is now settled and established that the jurisdiction of a visitor is summary and without appeal from it.' And it may be added, that such power is not more useful and con-

venient to colleges than to other well organized educational establishments. If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the school, offered an occasion for a resort to the Court for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the Courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficent purposes of the law. It is to obviate these consequences that the visitatorial power is conferred; and wherever that power exists, and is comprehensive enough to deal with the question involved in an existing controversy, as is the case here, courts of equity decline all interference, and leave the parties to abide the summary decisions of those clothed with the visitatorial authority."

The doctrine announced in that case has never been departed from or questioned. It was applied in the cases of *Shober* v. *Cochran,* 53 Md. 544; *Underwood* v. *School Board,* 103 Md. 181; and in the *Board of County School Commissioners of Prince George's County* v. *Manning, ante* page 169. In each of these cases it was distinctly held that when the controversy or dispute is one involving the proper administration of the public school system of the State, the Court has no power to interfere, and that all such questions must be referred to and finally settled by the State Board of Education. In the last cited case JUDGE THOMAS, referring to disputes concerning the administration of the public school system, said: "The determination of the State Board in such cases is final, and the courts have no authority to pass upon the merits of the controversy for the purpose of affirming or reversing their decisions. The statute requires the State Board to decide all controversies arising under the public school law without expense to the parties concerned, and the wisdom of that legislation is illustrated in this case. Such controversies in the courts not only greatly embarrass

the orderly and successful administration of the public school system, but impose heavy burdens and costs upon the parties interested."

When a purely legal question is involved, as in *Duer* v. *Dashiel*, 91 Md. 660 and *School Commissioners* v. *Henkel*, 117 Md. 97, the Court has power to determine it, but we know of no case involving, as this does, a question of school administration where the court has under the existing law undertaken to decide it. The appellee relies upon section 43 of Article 77 to support the jurisdiction of the lower court; but we do not regard that section as imposing a mandatory and imperative duty upon the appellant, under all circumstances, to keep the Boonsboro School open. Something is left to its judgment in respect to that matter. The State Board which is charged with the duty of explaining "the true intent and meaning of the law" has full power to advise the school board with respect to the proposed consolidation, and to correct any erroneous action it may take. The statutes under which the present school system of the State is organized have provided the mode and agency for settling all such questions as this without resort to the court." *Wiley's case, supra;* and while the dispute between the patrons of this school and the School Board is to be regretted, the allegations of the petition furnish no grounds for the interference of the Court. Being of opinion that the demurrer to the petition should have been sustained, the order appealed from will be reversed and the petition dismissed.

*Order reversed and petition dismissed with costs to the appellant.*