## BOARD OF EDUCATION OF GARRETT COUNTY ET AL. v. DAN LENDO

[No. 50, September Term, 1982.]

*Decided December 21, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Ellen M. Heller, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Ralph M. Burnett* on the brief for appellants State Board and Garrett County Board, and *Charles A. Reese* and *Judith S. Bresler* on the brief for appellant Board of Education of Montgomery County.

*Joel A. Smith,* with whom were *Abato & Abato, P.A.* on the brief, for appellee.

*Amicus curiae* brief of Maryland State Teachers

Association, Inc. filed. *Walter S. Levin, James R. Whattam* and *Sauerwein, Boyd, Decker & Levin* on the brief.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the State Board of Education is obliged to decide appeals to it from county boards of education under the provision of Maryland Code (1978) § 4-205(c)(4), Education Article. The State Board had been under the apparent impression that it had something approximating certiorari jurisdiction so that it was not mandated to decide such appeals.

The central figure in this controversy is Dan Lendo, a teacher in the schools of Garrett County, who taught driver education. He served as an athletic coach in interscholastic sports in addition to his teaching activities. This was after school hours. He coached junior varsity football and women's softball. His principal and vice-principal evaluated him in January 1981. They gave a rating of "effective" (the highest) for each of the eight items which pertained to classroom instruction. They marked "NI" ("needs improvement") under the ninth item on the evaluation form, "other." This pertained to his activities as a coach after school hours. Lendo appealed this evaluation to the Superintendent of Schools of Garrett County pursuant to the provisions of Code (1978) § 4-205(c), Education Article.[1] He contended that teacher evaluations such as his should be based only upon classroom instruction or other performance during school hours. The appeal was unsuccessful.

---

1. Code (1978) § 4-205 (c) states in pertinent part:

"*Interpretation of law; controversies and disputes.* — (1) . . .

(2) Subject to the authority of the State Board under § 2-205 (e) of this article, each county superintendent shall explain the true intent and meaning of:

(i) The school law; and

(ii) The applicable bylaws of the State Board.

(3) Subject to the provisions of § 6-203 and Subtitle 4 of Title 6 of this article and without charge to the parties concerned, each county superintendent shall decide all controversies and disputes that involve:

(i) The rules and regulations of the county board; and

Lendo then appealed to the Board of Education of Garrett County.[2] That, too, was unsuccessful. Lendo then sought review by the State Board of Education. It will be noted by reference to n. 1 that § 4-205 (c) (4), after making provision for an appeal to the County Board says, "The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board." The State Board declined to hear the case. An appeal to the Circuit Court for Garrett County followed.

Both the State Board and the Board of Education of Montgomery County were permitted to intervene in the circuit court proceeding. The trial judge (Thayer, J.) reversed the action of the State Board and remanded the case to it for appellate review, filing a well-reasoned opinion. He summarized the position of the parties:

"An analysis of the respective parties' contentions reveals at one end of the spectrum [Lendo's] position that any appeal taken to the State Board under Section 4-205 (c) *must* be heard and considered; in the center is the position of the State Board and the Garrett County Board that the State Board may, but need not, consider such appeals if they do not involve matters of constitutional right, state law or by-laws, rules and regulations having the force of law; at the other end of the spectrum is the Montgomery County Board of Education's position that the State Board may not hear local issues not amounting to alleged denial of · constitutional right or involving state law or

---

(ii) The proper administration of the county public school system.

(4) A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board."

**2.** Despite the titling of this case by some of the parties, Code (1978) § 3-104 (a), Education Article, provides, "Each county board is a body politic and corporate by the name of the Board of Education of . . . . . . . County."

by-laws or regulations having the force of law."
(Emphasis in original.)

An appeal to the Court of Special Appeals followed. We granted the petition of the State Board and the Garrett County Board for a writ of certiorari prior to the hearing of the case by the latter court.

It seems that the State Board of Education in 1973 began taking the position that it was not obliged to decide appeals such as that of Lendo's. It was conceded at oral argument that this case involves the issue of proper administration of the county school system within the purview of § 4-205 (c) (3) (ii) which we quoted in n. 1. However, the State Board and the Garrett County Board argue:

"[T]he unambiguous language of the statute sets definite limitations as to what the State Board is *required* to do in regard to controversies and disputes within the public school system. Under § 2-205(e), the State Board has the mandatory obligation to explain — 'shall explain' — only those provisions of the Education Article that are 'within its jurisdiction' as well as its own bylaws, rules and regulations. More important to the question at hand, the State Board has a mandatory duty to decide — 'shall decide' — only those controversies and disputes concerning a public school law in the Education Article or a State Board bylaw. In short, the State Board is only required to decide those 'controversies arising under the public school law.' *Board of County School Commissioners of Caroline County v. Morris,* 123 Md. 398, 403 [, 91 A. 718, 91 A. 720] (1914). There is no language in § 2-205 (e) from which it could be inferred that the State Board has a nondiscretionary obligation to accept appeals brought to it under § 4-205 (c) which do not contain allegations of violations by local school systems of particular State statutes in the

Education Article or a State Board bylaw."
(Footnote omitted. Emphasis in original.) [3]

Petitioners err when they rely upon *School Commissioners v. Morris,* 123 Md. 398, 91 A. 718, 91 A. 720 (1914). In that instance, the Board of County School Commissioners of Caroline County appealed from an order of the Circuit Court for Caroline County directing a writ of mandamus to issue commanding the Board to open for pupils a certain school and to keep it open throughout the scholastic year as in previous years. The Court there referred to a number of our prior cases and said:

> "In each of these cases it was distinctly held that when the controversy or dispute is one involving the proper administration of the public school system of the State, the Court has no power to interfere, and that all such questions must be referred to and finally settled by the State Board of Education." 123 Md. at 403.

It was in that context that the Court quoted from *Zantzinger v. Manning,* 123 Md. 169, 90 A. 839 (1914), stating:

> "The determination of the State Board in such cases is final, and the courts have no authority to pass upon the merits of the controversy for the purpose of affirming or reversing their decisions. The statute requires the State Board to decide all controversies arising under the public school law without expense to the parties concerned, and the

---

**3.** Code (1978) § 2-205 deals with the powers and duties of the State Board. Subsection (e) states:

"(e) *Interpretation of law; controversies and disputes.* — (1) Without charge and with the advice of the Attorney General, the State Board shall explain the true intent and meaning of the provisions of:

(i) This article that are within its jurisdiction; and

(ii) The bylaws, rules, and regulations adopted by the Board.

(2) The Board shall decide all controversies and disputes under these provisions.

(3) The decision of the Board is final."

wisdom of that legislation is illustrated in this case. Such controversies in the courts not only greatly embarrass the orderly and successful administration of the public school system, but impose heavy burdens and costs upon the parties interested." 123 Md. at 403-04 (quoting *Zantzinger,* 123 Md. at 182).

The Court held that the issue before it was one properly cognizable by the State Board of Education and not by the courts.

The statute with which we are here concerned was not even in existence at the time *School Commissioners v. Morris* was decided. In 1915 the Maryland Educational Survey Commission was appointed. As a direct result of its report a very substantial revision was made in Maryland's school law by ch. 506 of the Acts of 1916. The statutory genesis of § 4-205(c) is that chapter. The *Fiftieth Annual Report of the State Board of Education* for the year ending July 31, 1916, comments at p. 33 relative to the new section which said that the county superintendent of schools "shall decide, without expense to the parties concerned, all controversies," etc., with the further right of appeal to the State Superintendent of Schools. The statute remained unchanged from a revision by ch. 249 of the Acts of 1920 until the enactment of ch. 405 of the Acts of 1969 which again extensively revised the Public Education Article. Prior to that revision that section, then being Code (1957) Art. 77, § 150, read in pertinent part:

"The county superintendent of schools shall explain the true intent and meaning of the school laws, and of the bylaws of the State Board of Education. He shall decide, without expense to the parties concerned, all controversies and disputes involving the rules and regulations of the county board of education and the proper administration of the public school system in the county, and his decision shall be final, except that an appeal may be

had to the State Board of Education if taken in writing within thirty days. . . ."

The 1969 revision added the appeal to the county board. Art. 77, § 59 as amended by the 1969 revision stated, "Further appeal may be had to the State Board of Education if taken in writing within thirty days following the final decision of the county board."

The present statutory language came about as a result of recodification. The Revisor's Note states relative to § 4-205(c)(3) that "new language has been added to include the hearing examiner provisions of § 6-203 of this article." As to paragraph (4) the note states, "[A] 30-day time limit had been placed on appeals to the State Board. By amendment a similar 30-day time limit was placed on appeals to the county board." Then the Revisor's Note goes on to state, "The only other changes are in style."

The principles of statutory construction have been stated many times by this Court. In *Police Comm'r v. Dowling,* 281 Md. 412, 418-20, 379 A.2d 1007 (1977), we set forth a number of those principles, citing cases for each. The ones applicable to this proceeding include: The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. Where two statutes deal with the same subject matter, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each. This is true notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other, because in that case the rule is that statutes must be harmonized to the extent possible. This principle of statutory construction operates because the law does not favor repeal by implication. Put in slightly different words, yet another cardinal rule of statutory construction is that

repeals not expressed will not be found unless demanded by irreconcilability or repugnancy. Unless the intention of the Legislature is clearly otherwise, the requirements of one will be construed as embodying the provisions of the other. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *See also, Hurst v. V & M of Virginia,* 293 Md. 575, 578-79, 446 A.2d 55 (1982), and *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 388-89, 444 A.2d 1024 (1982).

It is true, as the State Board argues, that our cases say that a construction placed on a statute by administrative officials soon after its enactment is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reason. *See, e.g., John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A.2d 473 (1953), and *Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A.2d 754 (1946). From this the State argues that since it placed an interpretation on this statute in 1973 identical to that which it now argues, it should not be overruled; that this is a long-standing administrative construction. First of all, it should be pointed out that, insofar as this record discloses, this construction was not placed on the statute until more than half a century after its enactment. Secondly, where language is plain and unambiguous the judicial construction cannot be controlled by extraneous considerations. No custom, however venerable, can nullify the plain meaning and purpose of a statute. *Rogan v. Baltimore & O.R.R.,* 188 Md. 44, 58, 52 A.2d 261 (1947). In *Comptroller v. A. Cyanamid Co.,* 240 Md. 491, 505, 214 A.2d 596 (1965), Judge Hammond said for the Court:

"There can be no challenge to the proposition that the Comptroller cannot by rule or otherwise make taxable that which the Legislature has excluded or exempted from taxation and cannot exclude or exempt that which the law says is taxable."

Likewise, no administrative agency may by rule or otherwise make nonappealable that which the law says is appealable. To similar effect see *F. & M. Schaefer v. Comptroller,* 255 Md. 211, 218-19, 257 A.2d 416 (1969), as to both propositions.

Although the statute here in question has not heretofore received the attention of this Court, it has been considered a number of times by the United States District Court for the District of Maryland. *See, e.g., Robinson v. Board of Education of St. Mary's County,* 143 F.Supp. 481, 487-88, 491 (D. Md. 1956).[4] Our decision here is consistent with *Robinson.*

The language here used provides an option to a party aggrieved as to whether he will or will not appeal the matter. The option is not to the adjudicatory body, the State Board of Education. Maryland statutes abound with provisions to the effect that a party deeming himself aggrieved by a decision "may appeal." All parts of the Education Article must be read together for the purpose of interpretation of the right granted in § 4-205. To hold that the State Board of Education has the discretion as to whether it shall or shall not hear the appeal in this instance would be to insert words into the statute, which we are not permitted to do. The argument that this will place a tremendous workload on the State Board of Education, that the number of appeals will create fiscal problems, and that the county superintendents collectively make hundreds of

---

4. *Robinson* is all the more interesting because its author, Chief Judge Thomsen, was a former president of the Board of School Commissioners of Baltimore City. Moreover, he relied in that decision upon the representations made to him by the State Law Department. Then Attorney General Sybert was later a judge of this Court. Deputy Attorney General Ramsey, who appeared in that instance, is now a judge of the United States District Court for the District of Maryland.

decisions each day do not override the plain meaning of the statute which it is our duty to interpret. The workload of the State Board and the fiscal implications are problems for the General Assembly. It does not follow insofar as decisions of county superintendents are concerned that all such decisions are appealable matters.

The statute speaks for itself. As the trial judge said in this case:

"To hold that the State Board's obligation to hear appeals is set forth solely in Section 2-205(e) is to circumscribe Section 4-205(c) beyond any expressed intention of the legislature, and apparently beyond the plain implication of the latter section."

The interplay between §§ 2-205 and 4-205 is best explained as set forth in the amicus brief of Maryland State Teachers Association, Inc.:

"1. §2-205 was intended by the General Assembly as a grant of *original* jurisdiction to the State Board, such that, in the limited instances enumerated in that section, a litigant could go directly to the State Board for a decision without the need for exhausting any lower administrative remedies. Since the category of cases involved deal primarily with statewide issues (i.e., statutes and/or bylaws applicable to *all* county boards of education), no useful purpose would be served by *requiring* a lower level administrator or agency to decide a question of statewide applicability.

"2. §4-205, on the other hand, vests the State Board with *appellate* jurisdiction over the types of cases therein set forth.

"Thus, in the instance of a case requiring an explanation of the 'true intent and meaning' of a provision of the Education Article or a State Board bylaw, a litigant has the choice of either going first

to the county superintendent under §4-205 and then on up the appellate ladder, or going directly to the State Board under §2-205. In this regard, it is important to note that §4-205 (c) (2) states that the county superintendent's obligation to explain the true intent and meaning of the school law is '[s]ubject to the authority of the State Board under §2-205(e) . . : .' " (Emphasis in original.)

We conclude that the State Board is required by law to hear this appeal. Our conclusion here is consistent with what we said early this year in *Hunter v. Bd. of Educ., Mont. Co.,* 292 Md. 481, 439 A.2d 582 (1982):

"[S]ection 4-205 (c) (3) of the Education Article commands that each county superintendent, 'without charge to the parties concerned . . . shall decide all controversies that involve: (i) [t]he rules and regulations of the county board; and (ii) [t]he proper administration of the county public school system,' with the decision being appealable to the county board and then to the state board of education, § 4-205 (c) (4), and further, if appropriate, to the courts through the administrative procedure act, Md. Code (1957, 1978 Repl. Vol. & 1981 Cum. Supp.), Art. 41, §§ 255, 256 . . . ." 292 Md. at 488-89.

> *Judgment affirmed; appellants to pay the costs.*