599 A.2d 91

**The MARYLAND CLASSIFIED EMPLOYEES ASSOCIATION, INC. et al. and American Federation of State, County, and Municipal Employees, Council 92, Maryland State Employees Union et al.**

v.

**Governor William Donald SCHAEFER et al.**

**No. 50, Sept. Term, 1991.**

Court of Appeals of Maryland.

July 17, 1991.

Opinion Dec. 12, 1991.

**20**

J. Edward Davis and Stephen B. Awalt, Towson, and William H. Engleman, Baltimore, for petitioners.

Judson P. Garrett, Jr., Deputy Atty. Gen., Baltimore, J. Joseph Curran, Jr., Atty. Gen., for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this 17th day of July, 1991

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Anne Arundel County be, and it is hereby, affirmed. Costs in this Court and in the Circuit Court for Anne Arundel County to be paid by the Petitioners. Mandate to issue forthwith.

MURPHY, Chief Judge.

This case involves the validity of an Executive Order promulgated by the Governor of Maryland, which increased the work week for substantial numbers of State Executive Branch employees from 35½ hours per week to 40 hours, without additional compensation.

## I.

Governor William Donald Schaefer, by Executive Order dated February 27, 1991, decreed that "[t]he normal work week for State employees [in the Executive Branch of Government] shall be 40 hours effective July 1, 1991."[1] The Executive Order directed the Secretary of Personnel and the appointing authorities to "take all actions necessary or desirable to implement this directive." In his order, the Governor stated that "[t]he federal government, most pri-

---

1. By appropriate directives issued by the administrative head of the Judiciary and by the presiding officers of the General Assembly, employees of both branches were similarly required to work a 40–hour week.

vate and public sector employees, and one-third of State employees presently work 40 hours a week"; that it was prudent "[d]uring these difficult fiscal times ... to search for savings for the taxpayers of this State"; and that a standardized "40 hour work week for State government will achieve cost containment through increased productivity and employee development."

Two separate declaratory judgment actions were thereafter instituted in the Circuit Court for Anne Arundel County to declare the Governor's Executive Order void *ab initio*. The first action was filed by the Maryland Classified Employees Association, Inc., and various of its employee members; the second action was filed by the American Federation of State, County and Municipal Employees and a number of classified employees. Named as defendants were the Governor, the State of Maryland, the Secretary of Personnel, and the Board of Regents of the University of Maryland.

The plaintiffs in each suit (hereinafter collectively the plaintiffs) averred that the Code of Maryland Regulations (COMAR) 06.01.01.42A(1)(a) defined a full-time work week as "5 work days, and at least 35½ hours up to a maximum of 40 hours"; that the appointing authorities are authorized by law to designate the work week for all positions under their control; that for many years the appointing authorities have designated 35½ hours as the normal work week for Executive Branch employees; and that, as the Governor is not the appointing authority, his Executive Order cannot lawfully change the work week hours. The plaintiffs further alleged that Maryland Code (1985 Repl.Vol., 1990 Cum. Supp.), Article 100, § 76 provides that "every State employee who works in excess of the normal work week ... shall receive extra compensation for such hours worked in excess of that time"; that the Governor's order violates this law and requires Executive Branch employees to work an additional 4.5 hours without paying the additional compensation mandated by § 76; and that the Governor is not empow-

ered, absent legislative authorization, to make changes that are inconsistent with the existing law.[2]

In their suits, the plaintiffs claimed that, as classified State employees, they have "a property right in their employment [which] cannot be taken from them without due process of law"; and that the Governor's order deprives them of their wages by requiring that they work greater hours without additional pay or benefits. In this regard, the plaintiffs asserted that the Governor and the other defendants, through their actions, violated the "separation of powers" provisions of Article 8 of the Maryland Declaration of Rights by attempting to execute a legislative function, specifically the regulation of overtime pay in conflict with the provisions of § 76. The plaintiffs claimed that because they "accepted jobs with compensation established on a 35½ hour work week, ... worked at those jobs for many years, ... made child care, home and family commitments based on the State's promise of a 35½ hour work week, [they] have acquired a vested right ... in the continuation of a 35½ hour work week, and compensation for hours worked in excess of 35½ hours." Moreover, based upon these alleged facts, the plaintiffs averred that they have an express or implied contract with the State to work a 35½-hour work week, with overtime or compensatory time for all hours worked in excess of 35½ hours; and that as a result of the Governor's order, their contract with the State has been breached and will cause them monetary and nonmonetary damages.

The plaintiffs also asserted that the Governor's order violated provisions of Code (1988 Repl.Vol., 1991 Cum. Supp.), Article 64A (the State's Merit System Law), pursuant to which the Secretary of Personnel promulgated the State's "Salary Plan." As to this, the plaintiffs stated that,

---

2. When first enacted in 1945, this provision was codified as Code, Article 100, § 77. Since October 1, 1991, the provision is codified as Code (1991 Repl.Vol.), Article 89, § 27. For simplicity, all references to this statute in this opinion are to former Article 100, § 76.

under § 27 of Article 64A, the Secretary must recommend to the Governor a pay plan for State employees "to the end that all positions in the service involving comparable skills, knowledge, effort, responsibility, and working conditions shall be paid comparable salaries in accordance with the relative value of the services to be performed." The plaintiffs alleged that the Secretary's Salary Plan has the force of law and includes a rule that the rate of pay for any employment classification cannot be changed except as authorized by the Legislature; and when the salary plan became effective, the duties and classifications of the plaintiffs were those performed within a 35½–hour work week. Consequently, they averred that "the salaries and compensation for the classifications in the salary plan were established by the Secretary and approved by the Governor fully recognizing that the compensation rates were a 35½ hour work week and that the employees would receive additional overtime compensation for all hours worked in excess of 35½ hours per week." According to the plaintiffs' suits, to increase the hours of the work week results in lowering the rate of pay for positions within the salary plan, an action that cannot lawfully be initiated except by the Secretary in accordance with the provisions of § 27 of Article 64A; that the pay plan cannot otherwise lawfully be amended; but that "the Secretary and Governor failed to act as required by said section which requires that the amended pay plan be reported to the General Assembly by the 15th day of a regular session which was not done." Because of this failure, the plaintiffs asserted that the Governor's Executive Order, which in effect altered the salary plan, was not within his lawful authority and was therefore invalid.

The parties entered into a detailed stipulation of facts which, *inter alia,* stated that the Governor's order was actually implemented by the appointing authorities; and that 33,438 State employees in the Executive Branch, who work 35½ hours per week, were thereby affected. It was further stipulated that the regular work week of 21,175 State Executive Branch employees is 40 hours; that in the

University of Maryland System, 5,083 employees presently work 40 hours per week and 5,262 employees work fewer than 40 hours per week; and that those employees whose work week has been 35½ hours earn cash overtime or compensatory leave for hours worked in excess of 35½ hours per week. It was also stipulated that there are 442 employment classifications in the State merit system; that merit system employees are paid on an annual basis; that in establishing the rates of pay for the classifications in the State Salary Plan, the hours worked by employees are not taken into consideration; and that consequently 40–hour employees receive the same salaries as 35½–hour employees working in the same classification. Finally, it was stipulated that the Secretary of Personnel reported no amendments to the salary plan to the General Assembly in January of 1991.

The cases were consolidated and cross-motions for summary judgment were filed by the parties upon the further stipulation that the exhibits in support of the defendants' motion for summary judgment were genuine, authentic, and admissible, if relevant. The circuit court (Thieme, J.) granted summary judgment for the defendants on July 9, 1991. It found no dispute as to any material fact and concluded in a detailed opinion that, as a matter of law, there was no merit in any of the plaintiffs' allegations.

Claiming that the case was one of "monumental significance," the plaintiffs appealed to the Court of Special Appeals. They simultaneously petitioned this Court for a writ of certiorari to bypass the intermediate appellate court, as authorized by Code (1989 Repl.Vol., 1991 Cum.Supp.), § 12–201 of the Courts and Judicial Proceedings Article. In their petitions, the plaintiffs presented these issues for our review:

"1. Whether the Governor's Executive Order requiring the Plaintiffs to work a 40 hour work week without additional compensation violates the doctrine of Separation of Powers.

"2. Whether the Governor's Executive Order requiring the Plaintiffs to work a 40 hour work week without additional compensation violates the Plaintiffs' contract rights.

"3. Whether the Governor's Executive Order requiring Plaintiffs to work a 40 hour work week without additional compensation violates the Plaintiffs' procedural due process rights.

"4. Whether the Governor's Executive Order requiring Plaintiffs to work a 40 hour work week without additional compensation violates the State's Pay Plan Law."

We granted certiorari and advanced the matter on the docket to promptly resolve the important issues raised in the case. By per curiam order dated July 17, 1991, we affirmed the judgment of the Circuit Court for Anne Arundel County "for reasons to be stated in an opinion later to be filed." We now give our reasons for that determination.

## II.

The executive power of the State is vested in the Governor of Maryland by Article II, § 1 of the Constitution of Maryland. Maryland Code (1984, 1991 Cum.Supp.), § 3–302 of the State Government Article provides that the Governor, unless otherwise provided by law, "shall supervise and direct the officers and units" in the Executive Branch of government. Section 3–401 of this Article defines an Executive Order of the Governor, *inter alia*, as one which adopts "guidelines, rules of conduct, or rules of procedure for:

(i) State employees;

(ii) units of the State government; or

(iii) persons who are under the jurisdiction of those employees or units or who deal with them." [3]

Code (1990 Repl.Vol.), Article 41, § 9–101 creates the Department of Personnel as a principal department of State government. Its head, appointed by the Governor, is the Secretary of Personnel, who is charged with responsibility for the operation of the department. The Secretary is directed to establish guidelines and procedures to promote the orderly and efficient administration of the department. Section 9–105 authorizes the Secretary of Personnel to promulgate rules and regulations for the governance of the Department. Code (1988 Repl.Vol., 1991 Cum.Supp.), Article 64A, § 11 also authorizes the Secretary of Personnel, in the administration of the State's merit system law, to make rules and regulations as may be deemed necessary. Section 27 of this Article empowers the Secretary to recommend to the Governor "a pay plan for all classified and unclassified positions for which the Secretary has authority to administer pay." This section outlines various criteria to be considered by the Secretary in his salary plan recommendations to the Governor. It also provides that the pay plan take effect when funds for that purpose are available within the State Budget. Code (1988), § 7–108(b) of the State Finance and Procurement Article requires the Governor to include in each Budget Bill "the current salary plan of the Secretary of Personnel as the basis for the appropriations to pay those salaries to which the plan applies."

COMAR 06.01.01.42A(1), the applicable personnel rule promulgated by the Secretary of Personnel, provides that the "full-time work week consists of 5 work days, and at least 35½ hours up to a maximum of 40 hours." It also provides that "[t]he appointing authority shall designate the work week for all positions under the appointing authority's control, and shall file the designation with the Secretary [, which] is effective until the appointing authority changes

---

3. The Attorney General of Maryland has opined that an Executive Order issued by the Governor has the force of law as long as it is not inconsistent with an existing statute. *See* 64 Op. Att'y Gen. 180 (1979).

it." Subsection (f) provides that work in excess of a position's normal work week shall be compensated by overtime payments or by compensatory leave.

In its present form, § 76(a) specifies that, unless otherwise provided, "every State employee [in the Executive Branch] who works in excess of the normal work week ... shall receive extra compensation for such hours worked in excess of that time." This section also provided, *inter alia,* that "[p]ayment for time worked in excess of the position's normal work week but not in excess of 40 hours shall be made at the employee's usual hourly rate or rates."

### III.

### *Separation of Powers*

■ We first consider the plaintiffs' contention that the Governor, by his Executive Order, contravened the legislative mandate of a 35½-hour work week contained in Article 100, § 76. They claim that, in doing so, the Governor usurped the plenary power of the General Assembly and exercised a legislative function, thereby unlawfully denying State employees the overtime compensation required by § 76 for work in excess of 35½ hours per week.

In the circuit court, Judge Thieme concluded that the Governor was "specifically authorized, through the legislative grant of authority to the Secretary of Personnel, to control virtually all aspects of employment including the work week for State employees in the Executive branch." He further said that, as head of the Executive Branch of government, the Governor was authorized to direct and supervise the officers of that branch, including the Secretary of Personnel who serves at his pleasure. Judge Thieme noted that the Secretary has been given extremely broad power by the Legislature in matters concerning State personnel, including rule-making authority to carry out the provisions of the merit system law. The authority vested in the Secretary, Judge Thieme observed, encompassed establishing "the number of hours in a work week," and as the

Secretary was the Governor's appointee and subject to his direction, the Governor's Executive Order was within his authority to promulgate. Specifically, Judge Thieme said that the definition of an Executive Order in § 3–401 of the State Government Article was sufficiently broad "to allow the Governor to control and direct the officers over whom he is statutorily given control ... [including] the essential aspects of state employment such as hours in a work week."

In reaching this determination, Judge Thieme recognized that the Governor cannot by Executive Order "undo what the legislature has done by statute." He said, however, that the Governor, in promulgating his Executive Order, did not attempt to override § 76, because that statute deals with overtime compensation and simply directs "that employees who work in excess of their normal work week, but less than 40 hours, will be compensated at the usual hourly rate." Section 76, Judge Thieme said, does not establish that the normal work week is 35½ hours, and that work in excess of those hours is compensable. In support of his conclusion, Judge Thieme reviewed the history underlying the provision of a "normal work week" and the meaning of § 76. He said that Personnel Rule 42E (now set forth in COMAR as 06.01.01.42A) established the normal work week "to be not less than 35½ hours and not more than 40 hours"; that had the Legislature intended to mandate a 35½–hour work week contrary to the Secretary's regulation, it would have expressly so provided; and that the Governor's action did not therefore contravene the doctrine of separation of powers. Judge Thieme observed:

"[T]he Governor's action does not render the statute a nullity, for the statute remains perfectly valid unless the designation of the work week has been changed to 40 hours, as was done in this instance. The simple fact that the employees will not be able to take advantage of the statute does not render it a nullity since its usefulness was predicated upon the flexibility of the work week. In the future if the work week is reduced the statute will

once again be controlling for hours worked in excess of the designated work week short of 40 hours."

We are in full agreement with Judge Thieme's reasons for granting summary judgment for the defendants. There is simply no merit to the plaintiffs' argument that the normal work week, as used in § 76, is the "established level or pattern of work," namely, 35½ hours per week. As earlier indicated, nothing in the language of § 76 fixed the normal work week of State employees at 35½ hours. Regulation 42E of the then Commissioner of Personnel (precursor of the Secretary of Personnel), which was extant at the time that § 76 was amended to refer to a "normal work week," defines that term to mean not less than 35½ hours but not more than 40 hours.

As its history demonstrates, § 76 was enacted to alleviate the plight of State employees who received no overtime compensation regardless of the number of hours or days worked during a week. In this regard, the stipulated facts show that, on November 16, 1944, the Governor was urged to establish a uniform rule governing the work week of State classified employees. At that time, the work week varied from agency to agency, with some office employees working 5½ days, others working greater hours, and at least one employee required to work 6½ days per week. No overtime compensation was permitted in any of these instances. It was recommended to the Governor that the official work week be limited to 6 days, but that those agencies on a 5½–day work week be allowed to continue, and that overtime compensation be paid for more than 6 days and for working on Sunday and 13 holidays.

By ch. 1015 of the Acts of 1945 (an emergency enactment), the General Assembly added former Article 100, § 76. In its original form, overtime was to be paid to any State employee, except hourly employees, for work in excess of 48 hours per week. Thereafter, on September 13, 1945, the Commissioner of State Employment and Registration (another precursor of the Secretary), with the approval of the State Board of Public Works (which is comprised of

the Governor, the Comptroller, and the State Treasurer), issued a Bulletin fixing the work week at 5 days; the hours on 4 of those days were from 9 a.m. to 5 p.m. and on the 5th day from 9 a.m. to 5:30 p.m. Excluding luncheon and other breaks, the Bulletin contemplated 40½ hours during a 5–day week, even though ch. 1015 of the Acts of 1945 referred to overtime compensation only after 48 hours had been worked. The substance of the Bulletin was later incorporated into and became known as Regulation 42E. It is thus clear that the General Assembly, by its 1945 enactment of ch. 1015, addressed the issue of overtime compensation while the Commissioner, by Regulation 42E, addressed the separate issue of a standard work week.

The General Assembly amended § 76 by ch. 319 of the Acts of 1947 to exclude certain agencies from its scope. Chapter 52 of the Acts of 1952 again amended the statute by reducing the overtime compensation threshold to 44 hours for all employees other than hourly employees. Although the Legislature was presumptively aware of Rule 42E, *see Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 453 A.2d 1185 (1982), neither of these acts changed the substance of the personnel regulation—an indication that the Legislature did not intend that § 76 establish a fixed work week.

Chapter 130 of the Acts of 1956 further amended § 76 by dividing State employees into four classes—(1) shift workers, who were to receive overtime after 40 hours, (2) non-shift workers, who were to receive overtime after 44 hours, (3) hourly workers, who were ineligible for overtime, and (4) supervisory personnel, who also were ineligible for overtime. Thereafter, the Commissioner of Personnel wrote to the Board of Public Works concerning the requirements of that enactment. On May 24, 1956, with the concurrence of the Board of Public Works and the approval of the Governor, the Commissioner of Personnel amended Rule 42E as follows:

"E. *Work Week, Overtime and Compensatory Credits*

1. *Work Week.* By authority of the Board of Public Works, the 5 day normal work week is:

   For institutional employees other than office workers: 40 hours.

   For institutional office employees and all employees of general State departments—Not less than 35½ hours.

   .    .    .    .    .

3. *Overtime.* As provided by Chapter 130, Acts of 1956, payments for overtime work are to be based on authorization of Commissioner, on file in respective State agency, and Central Payroll Bureau or other prescribed payroll unit."

The amendments to Rule 42E treated the work week and overtime compensation as two separate categories. The reference to ch. 130 of the Acts of 1956 in the personnel regulation was applicable only to overtime compensation.

By chs. 6 and 31 of the Acts of 1958, the General Assembly, with some exceptions, established the threshold for overtime compensation at 40 hours. Rule 42E was again amended to show this change in the overtime compensation permitted by law.

By ch. 167 of the Acts of 1969, § 76 was again amended in several particulars to comply with requirements of the federal Fair Labor Standards Act for payment of time and a half, rather than straight time, for hours worked in excess of 40 hours. Conforming amendments to Rule 42E were made on July 1, 1970. On June 30, 1974, Rule 42E was incorporated within COMAR without substantive change and is now numbered as 06.01.01.42A(1).

In 1978, the COMAR regulation was amended to read: "(1)(a) The appointing authority shall designate the work week for all positions under his control. The designation of work week hours is effective until the appointing authority changes it.

(b) Full-time Employees. The work week consists of 5 working days, and not fewer than 35½ hours nor more than 40 hours."

Thereafter, by ch. 233 of the Acts of 1985, § 76 was again amended; its substance, as now, was that State employees who work in excess of the normal work week shall receive overtime compensation for hours worked in excess of that time.

None of the many amendments to either § 76 or the regulations of the Secretary of Personnel indicate a change in the basic dichotomy, begun in 1945, between the establishment of the work week hours and overtime compensation, namely, that the Legislature would exercise authority over payment for overtime, while the Executive Branch would designate the work week.[4] The contemporaneous construction of § 76 by the then Commissioner of State Employment and Registration, by his successors, the Commissioner of Personnel and the Secretary of Personnel, and the Board of Public Works, continuously followed to the present day, plainly mitigates against the interpretation of § 76 as specifying a fixed work week. In this regard, our cases have long held that "a construction placed on a statute by administrative officials soon after its enactment is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reason." *Board of Educ., Garrett Co. v. Lendo, supra,* 295 Md. at 63, 453 A.2d 1185. *See also Falik v. Prince George's Hosp.,* 322 Md. 409, 588 A.2d 324 (1991). While no custom, however venerable, can nullify the plain meaning and purpose of a statute, *Macke Co. v. Comptroller,* 302 Md. 18, 22–23, 485 A.2d 254 (1984), legislative acquiescence in a long-standing administrative construction " 'gives rise to a strong presumption that the interpretation is correct.' " *Morris v. Prince George's*

---

4. Chapter 372 of the Acts of 1989 specifically conferred rule-making authority on the Secretary of Personnel with respect to compensatory time, subject to federal law and election by the employee.

*County,* 319 Md. 597, 613, 573 A.2d 1346 (1990) (quoting *Sinai Hosp. v. Dep't of Employment,* 309 Md. 28, 46, 522 A.2d 382, 391 (1987)).  Furthermore, "[t]he General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law." *Board of Educ., Garrett Co., supra,* 295 Md. at 63, 453 A.2d 1185.

As we have already observed, the Governor, as the head of the Executive Branch, has broad powers with respect to Executive Branch State employees and over the Secretary of Personnel, who exercises his power subject to the Governor and carries out the Governor's policies with respect to personnel matters.  Consequently, there is no foundation to the plaintiffs' argument that the Governor has no authority to fix the normal work week by Executive Order.

## IV.

### Implied Contract

■  Before Judge Thieme, the plaintiffs argued that the State is estopped from changing the work week of those employees who, at the time the Executive Order was issued, held positions in which the work week was designated at 35½ hours.  They relied on the theory of an implied contract to continue to work only those hours, or to be paid for hours in excess of 35½ hours.  Judge Thieme said that "it is inconceivable that any implied contract purporting to fix the work week could be validly made" in light of the clear language of the regulation that work week hours are changeable within the range of 35½ to 40 hours per week. He noted that COMAR 06.01.01.42A provides that "[t]he appointing authority shall designate the work week for all positions under the appointing authority's control, [and that the] ... designation of work week hours is effective until the appointing authority changes it."  In view of these provisions, Judge Thieme emphasized that "the regulations clearly contemplate a flexible work week within the range

set subject to change by the appointing authority [and therefore] any implied contract must necessarily exist within the frame work of the existing rules and regulations, which in this instance preclude the implication of a fixed work week."

For the reasons stated by Judge Thieme, there is no merit to plaintiffs' implied contract argument.

## V.

### *Procedural Due Process*

■ The plaintiffs maintained in the circuit court, as they do before us, that the Governor's Executive Order constitutes a "taking" of the property interests of State employees in contravention of their due process rights. Specifically, they argued that by increasing the number of hours worked without increasing compensation, the Governor deprived them of their right to additional compensation without the traditional due process rights to notice, hearing, and an opportunity to be heard. As to this, Judge Thieme observed that there was no "taking" of a constitutionally protected property interest because the existing regulation of the Secretary of Personnel clearly defined the work week and specified that it is subject to change at the discretion of the appointing authorities. Consequently, he said, that since there was no property interest, there could be no denial of due process. He concluded that "[f]ar from creating an entitlement, the work week regulations affirmatively deny the creation of any property interest in a 35½–hour work week." In so concluding, the circuit court held that nothing in the Supreme Court cases relied upon by the plaintiffs mandated a different result.[5] We are in full accord with Judge Thieme's reasoning.

---

5. The plaintiffs placed primary reliance upon *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

## VI.

### *State Pay Plan*

The plaintiffs urge us to find that the Governor's Executive Order violated the State Pay Plan because it was inconsistent with certain procedures required by the Legislature before employees' salaries may be amended. Specifically, they claim that the Governor contravened § 27 of Article 64A by altering salaries of State employees without the legislative approval required by that statute. In this regard, the plaintiffs say that a change in the work week is a change in the salary plan, and that such a change cannot be effectuated by an Executive Order.

Judge Thieme concluded that a change in the work week was not a change in the salary plan. He reasoned that, because State employees are salaried and are paid based upon the classification that they hold, "a change in the number of hours worked does not alter the salary they make or the amount of money the State must pay out from the State Treasury." He said:

> "To be sure, the net effect of working more hours for the same pay on the individual level is a decrease in hourly pay, but such a decrease in 'calculated' pay is not what the pay plan procedures were implemented for. The pay plan is a budgetary creature and is concerned with the 'actual' payroll. Since the pay plan is not in fact altered the procedures it requires are not at issue."

As previously noted, the provisions of Article 64A, § 27(a)(1)(i) require that the Secretary "recommend to the Governor a pay plan for all classified and unclassified positions for which the Secretary has authority to administer pay." The section requires that the Secretary, in making his recommendations to the Governor, consider various criteria, including "working conditions," in establishing salary comparability and rates of pay; it also provides, in subparagraph (a)(1)(iv), that the Secretary, with the Governor's approval, "may amend the pay plan for specific classifications of positions in order to recruit or retain competent

personnel or to ensure that compensation rates adequately compensate the skills, knowledge, effort, responsibility, and working conditions." [6] Subparagraph (a)(3)(v) provides that amendments to the pay plan shall be reported to the General Assembly by the 15th day of the next regular session of the Legislature. It also provides that that body may reject amendments to the pay plan.

It was stipulated by the parties that no amendments to the salary plan were reported to the General Assembly in January of 1991. It was also stipulated that employees in the 442 employment classifications in the State personnel system are paid on an annual basis; that in establishing rates of pay for these classifications in the salary plan, the hours worked by employees are not taken into consideration; and that as a consequence 40–hour employees receive the same salary as 35½–hour employees working in the same classification.

In its most basic form, it is the plaintiffs' argument that an increase in the hours of the work week is a "working condition" within the contemplation of Article 64A, § 27(a)(1)(i) which, because the increase results in a reduction of salaries, constitutes an amendment to the pay plan. Hence, they say that this criteria for establishing rates of pay had to be factored into an amended pay plan and reported to the General Assembly before it could be implemented.

The fiscal year 1991 State Budget documents show that the increase in the work hours resulted in a cost-savings through the denial of additional appropriations for new positions and by reducing overtime costs. The increased hours did not cause a reduction of any salaries within the

---

6. Code, Article 64A, § 1(4) defines "class" to mean "a grouping of one or more positions sufficiently similar with respect to duties and responsibilities that the same descriptive title may be used to designate each position in that grouping and that the same general qualifications are needed for performance of the duties, that the same tests of fitness shall be used to select employees, and that the same rates of pay shall be applied to all positions in that grouping."

pay plan. Because there was no amendment to the pay plan, no notice to the General Assembly was required under § 27(a)(3)(v). We, therefore, share Judge Thieme's conclusion that the Governor's Executive Order did not effectuate an amendment to the State pay plan.