694 A.2d 468

COMPTROLLER OF THE TREASURY

v.

Helen NELSON et al.

No. 96, Sept. Term, 1995.

Court of Appeals of Maryland.

June 6, 1997.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General; Jean H. Baker, Assistant Attorney General, on brief), Baltimore, for Petitioner.

Barry C. Steel, Towson, for Respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, J. (Retired, Specially Assigned).

ELDRIDGE, Judge.

The issue in this case is whether, under the applicable statutory and regulatory scheme, a state agency is entitled to deny its employees reclassifications solely because of present fiscal difficulties.

## I.

Vicki George, Margaret Glidden and Helen Nelson were previously employed as Revenue Examiners III at the Motor Fuel Tax Division of the Office of the Comptroller of the Treasury. During 1991, all three employees met the qualifications for Revenue Specialist I, a position with a higher rate of pay and greater responsibilities than required for Revenue

Examiner III. Upon meeting these qualifications, the Division Director submitted to the Comptroller's personnel office applications for reclassification and back pay on behalf of the three employees. The applications were filed on April 4, 1991, July 18, 1991, and March 4, 1992, respectively.

Although each application was initially marked with a statement of approval by the personnel office, no action was taken on any of the applications.[1] In response to a September 1990 directive issued by Governor Schaefer, the Comptroller had frozen all reclassification requests as of November 1990.[2]

The Comptroller's decision to freeze reclassification requests was consistent with two policies promulgated by the Comptroller, both of which are applicable to the employees in this case. The first, "Personnel Policy # 8," provides in pertinent part as follows:

"G.   Availability of Funds

The classification of a position may not be changed unless funds are available in the department's and/or agency's

---

1.   When the employees' applications were initially submitted, they were stamped with the following statement: "We hereby certify that funds are available in our current budget to fund the recommended personnel transaction." According to the Personnel Director of the Office of the Comptroller, however, this stamp is merely a "blanket statement" or a "formality," and does not accurately reflect the current amount of funds in the agency's budget.

2.   In a memorandum dated September 4, 1990, Governor Schaefer directed all cabinet secretaries and heads of independent agencies "to reduce General Fund appropriations by $150 million to cover a current year shortfall caused by faltering revenues and unexpected cost increases." In pertinent part, the Governor's letter stated as follows:

"Effective today I am directing all State agencies to institute a hiring freeze on all current vacancies of full-time, part-time, and contractual positions.... I am further directing that all agencies begin a critical review of State construction projects, loan programs, and equipment purchases.

"To achieve the reduction in General Funds appropriation, I am assigning each agency head a General Fund reduction target and requesting a costcontainment plan be developed to achieve the targeted amount."

current budget to cover the cost of such a change." [3]

Under a second policy of the Comptroller's Office, the effective date of reclassifications and, therefore, salary upgrades, was deferred until the next pay period following approval of the reclassification requests.[4] Accordingly, it was unnecessary under this policy to award back pay to the three employees for the period before their reclassifications had been approved.

The three employees did not learn of the freeze on reclassifications until April 1993, when employees George and Glidden met with the Deputy Comptroller of the Treasury to discuss the status of their applications.[5] At that time, the Deputy Comptroller informed the employees that they would not be reclassified as Revenue Specialists I until October 1, 1993, and would not receive any back pay. As a result, on April 10, 19 and 28, 1993, respectively, employees George, Glidden and

---

**3.** The Office of the Comptroller distinguishes between "Personnel Policy # 7" reclassifications, which involve different steps or "grades" within a given position title, and "Personnel Policy # 8" reclassifications, which involve a different position title and upgrade, and greater responsibilities. The employees in this case were seeking Personnel Policy # 8 reclassifications. Applications for Personnel Policy # 7 reclassifications were typically processed first while Personnel Policy # 8 applications were processed "in the discretion of the management." Thus, if the Office lacked the funds to approve the Personnel Policy # 8 reclassifications, it would refuse to do so.

**4.** From 1981 through 1993, the Office of the Comptroller adhered to this policy. On October 26, 1994, however, the Comptroller amended the policy to make reclassifications effective immediately after the date on which the new duties and responsibilities were assigned to the employee.

**5.** There was some disagreement at the administrative level and in the courts below as to when the employees first learned that their reclassification requests were being denied. The Comptroller previously argued that the employees did not timely file their grievance applications pursuant to Maryland Code (1994, 1996 Supp.), § 12–203 of the State Personnel and Pensions Article. This argument was rejected by both the Administrative Law Judge and by the courts below, and it is not raised before this Court. Therefore, we accept the holdings below that the grievances were timely filed. *See* notes 7–8, *infra*.

Nelson filed grievances with respect to the reclassifications and back pay.

The Office of the Comptroller in August 1993 began to process Personnel Policy # 8 reclassification applications, and on September 29, 1993, all three employees were reclassified as Revenue Specialists I. None of the employees, however, received back pay.

In accordance with Maryland Code (1994, 1996 Supp.), §§ 12–201 through 12–205 of the State Personnel and Pensions Article, the three employees pursued unsuccessfully their grievances through the steps of the State Employees' Grievance Procedure.[6] Thereafter, they requested a hearing before the Office of Administrative Hearings.

On November 10, 1993, a hearing was held before Administrative Law Judge (ALJ) Geraldine A. Klauber. In her opinion and decision issued on December 6, 1993, the ALJ

---

**6.** In 1996, the State Employees' Grievance Procedure was amended and the relevant sections of the procedure were transferred to Maryland Code (1994, 1996 Supp.), §§ 12–201 through 12–205 of the State Personnel and Pensions Article. As this amendment made no substantive changes pertinent to this case, we shall refer to the present statutory provisions throughout this opinion.

Section 12–402, which provides the remedies available to successful grievants under the State Employees' Grievance Procedure, states as follows:

"§ 12–402. **Remedies available to grievants.**

(a) *In general.*—Except as provided in subsection (b) of this section, the remedies available to a grievant under this title are limited to the restoration of the rights, pay, status, or benefits that the grievant otherwise would have had if the contested policy, procedure, or regulation had been applied appropriately as determined by the final decision maker.

(b) *Back pay.*—(1) A decision maker at Step Two or Step Three of the grievance procedure may order an appointing authority to grant back pay.

(2)(i) In a reclassification grievance back pay may be awarded for a period not exceeding 1 year before the grievance procedure was initiated.

(ii) A back pay order under this paragraph is in the discretion of the Secretary and the Office of Administrative Hearings.

(3) Subject to the limitations in Title 14, Subtitle 2 of this article, an appointing authority shall carry out a back pay order issued under this subsection."

first rejected the Comptroller's argument that the grievance applications were not timely filed in accordance with Code (1993, 1994), § 10–206 of the State Personnel and Pensions Article.[7] The ALJ accepted the employees' position that they did not learn that their back pay requests were denied until the April 1993 meeting with the Deputy Comptroller.[8] The ALJ noted that all three grievance applications were properly filed within two weeks of that time.

The ALJ, however, determined that the Comptroller's policy deferring the effective date of reclassifications until after approval of the reclassifications conformed with C.O.M.A.R. 06.01.01.13–1A, which provides in pertinent part as follows:

**".13–1    Effective Date of Position Reclassification.**

A.    The effective date of a position reclassification shall be the date on which the duties and responsibilities warranting the reclassification were assigned to the position.    However, the effective date may not be earlier than 1 year before the date on which the reclassification is authorized."

---

**7.**   Section 10–206 provides as follows:
   **"§ 10–206.    Period to initiate grievance proceeding.**
      A grievance proceeding must be initiated by an employee within 30 days after:
      (1) the occurrence of the alleged act that is the basis for the grievance; or
      (2) the employee first knew or reasonably should have known of the alleged act that is the basis for the grievance."
   In 1996, § 10–206 was amended and transferred to Maryland Code (1994, 1996 Supp.), § 12–203 of the State Personnel and Pensions Article.   The revised section provides that a grievance proceeding must be filed within *20 days*, rather than *30 days*, after the earlier of the events listed in subsection (1) and (2) of § 10–206.   Because § 10–206 was in effect when events pertinent to this action occurred, that statute is applicable to this case.

**8.**   The Comptroller had argued that the employees should have known that they were being denied back pay either in January 1993, when an announcement was made at an employee awards assembly that only Personnel Policy 7 reclassifications were being approved, or in February 1993, when this same announcement was published in *The Ledger*, a local agency newsletter.   All three employees denied either being present at the awards assembly or receiving notice through the newsletter.

According to the ALJ, this regulation "caps management's discretion regarding how far back an agency may go in making reclass[ification] retroactive," but it "does not state that the effective date may [not] be less than one year before the reclassification is authorized, or at the time of authorization." Thus, the ALJ determined that the Comptroller's policy did not conflict with the regulation.

Finally, the ALJ held that "the Grievants' applications for reclassification came at a time when the Office of the Comptroller, along with the rest of the State, was in the throes of a fiscal crisis. The Office of the Comptroller, in accordance with Policy # 8, froze the Grievants' reclasses due to lack of funds." Thus, the ALJ concluded that "[t]he agency acted in conformance with Personnel Policy # 8 in not making the reclasses effective until there was money in the budget to fund the positions."

The employees sought judicial review in the Circuit Court for Anne Arundel County. Thereafter, the circuit court affirmed the agency decision, stating:

"1. The freeze on classifications ordered by the Office of the Comptroller was reasonably included within the directive from Governor William Donald Schaefer on September 4, 1990.

"2. The action taken with respect to the reclassification of Helen Nelson, Margaret Glidden, and Vicki George, as set forth in the record, was not arbitrary or capricious."

The employees appealed, and the Court of Special Appeals, in an unreported opinion, reversed and ordered that the case be remanded to the Office of Administrative Hearings for further proceedings. While the intermediate appellate court agreed that the grievances were timely filed, it held that the Comptroller's policy was inconsistent with C.O.M.A.R. 06.01.01.13–1A. The appellate court reasoned that the regulation expressly provides that "[t]he effective date of a position reclassification shall be the date on which the duties and responsibilities warranting reclassification were assigned to the position." Thus, according to the Court of Special Ap-

peals, the Comptroller's policy of making a reclassification effective beginning the pay period following approval of the reclassification was clearly inconsistent with the regulation.[9]

Furthermore, in rejecting the argument that the Comptroller's Office would have exceeded its budget by conforming to the regulation, the intermediate appellate court stated that "[a] legislative or executive refusal to provide funds at a particular time is not a valid reason for denying reclassification to an otherwise deserving employee." The Court of Special Appeals explained that a "determination that a reclassified employee is entitled to back pay does not constitute an order providing for the payment of those funds by a particular date. It is the prerogative of . . . the General Assembly to determine whether funds will be made available to satisfy any award." The appellate court pointed out that Code (1994, 1996 Supp.), §§ 14–201 through 14–204 of the State Personnel and Pensions Article, set forth a procedure by which the General Assembly may, in the annual budget, appropriate funds for the satisfaction of reclassification and back pay awards rendered in administrative proceedings.

The Comptroller filed a petition for a writ of certiorari which this Court granted. *Comptroller v. Nelson,* 340 Md. 268, 666 A.2d 144 (1995).

## II.

The Comptroller's primary argument is that agency employees have no right to seek reclassification and back pay when the agency freezes funds "during the pendency of a statewide recession" and pursuant to the directive of the Governor. The employees, on the other hand, maintain that neither the existence of a financial crisis nor the Governor's directive provided sufficient justifications for the Comptroller's denial of their requests. The employees rely primarily

---

9. In further support of its position, the Court of Special Appeals relied upon the Comptroller's concession in his brief that the pay policy adopted by the Comptroller's office was inconsistent with the regulation and that, effective October 26, 1994, the policy was changed to conform to the regulation.

on Code (1994, 1996 Supp.), §§ 14–201 through 14–204 of the State Personnel and Pensions Article, which specifically provide for an alternative procedure when an agency lacks the funds to pay awards rendered in administrative or judicial proceedings involving employee grievances.[10]

Sections 14–201 through 14–204 of the State Personnel and Pensions Article were originally enacted by Ch. 726 of the Acts of 1980. According to the Title of Ch. 726, the sections were for the purpose of "providing a funding mechanism for the payment of awards to employees." Sections 14–201 through 14–204 state as follows:

---

**10.** Sections 14–201 through 14–204 of the State Personnel and Pensions Article were amended in 1996 and are derived without substantial change from former Code (1957, 1993), Art. 64A, §§ 54 *et seq.*

The employees also rely for support upon C.O.M.A.R. 06.01.03.14, which similarly outlines a procedure to follow when an agency lacks sufficient funds in its budget to satisfy a back pay award to a reclassified employee. C.O.M.A.R. 06.01.03.14 provides as follows:

".14 **Awards of Back Pay.**

A. In any case in which the Secretary orders an appointing authority to grant back pay, the appointing authority shall comply with the following procedure:

(1) The appointing authority shall pay the award from funds appropriated for the salary of the employee's position.

(2) If sufficient funds were not appropriated to satisfy the award, the appointing authority shall seek an amended schedule for disbursement of appropriations pursuant to Article 15A, § 8, Annotated Code of Maryland.

(3) If sufficient funds are not avail able under § A(1) and (2), the appointing authority shall seek funds from the General Emergency Fund as provided for in Article 78A, Annotated Code of Maryland.

(4) If sufficient funds are not available under § A(1)—(3), the appointing authority shall report to the Comptroller of the Treasury as follows:

(a) The name of the employee;

(b) The date of the award;

(c) The amount of the award;

(d) The amount of the award unsatisfied; and

(e) The efforts undertaken by the appointing authority to satisfy the award under § A(1)—(3).

(5) If a partial payment can be made under any provision of this section, partial payment shall be made.

B. The appointing authority shall report in writing to the Secretary, within 20 days, after an award becomes final, that the appointing authority has complied with § A. The report shall include the same information required under § A(4)."

**"§ 14–201.  "Award" defined.**

In this subtitle, "award" means a final monetary or benefit award or judgment in an administrative, arbitration, or judicial proceeding involving an employee grievance or hearing that is held under:

(1) this Division I or a regulation adopted under it;  or

(2) a personnel policy or regulation that governs classified employees of the University of Maryland System or Morgan State University.

**"§ 14–202.  Payments—In general.**

If this state has sufficient money available at the time, an award made against this State or an officer or unit of this State shall be paid as soon as practicable within 20 days after the award is final.

**"§ 14–203.  Same—Money not immediately available.**

(a) *Report to Comptroller.*—If sufficient money is not available at the time to satisfy an award made against this State or an officer or unit of this State, the affected unit or officer shall report the outstanding award to the State Comptroller.

(b) *Duties of Comptroller.*—The Comptroller shall:

(i) keep an accounting of all outstanding awards;  and

(ii) report that accounting annually to the Governor.

**"§ 14–204. Same—Budget;   payment   of   outstanding awards.**

(a) *Budget.*—The Governor shall include in the State budget sufficient money to pay all awards made against this State or an officer or unit of this State.

(b) *Payment of outstanding awards.*—On appropriation of money by the General Assembly, the Comptroller shall authorize payment of all outstanding awards in the order of the date on which each award was made."

According to the Comptroller, the procedures set forth in §§ 14–201 through 14–204 of the State Personnel and Pensions Article are inapplicable to this case because the Comptroller's Office had "no funds to pay for the reclassification of

these or any other employee due to the State's fiscal crisis." The Comptroller argues that use of the statutory procedure is also inappropriate because the Comptroller froze reclassifications in accordance with a 1990 directive from the Governor. The Comptroller views §§ 14–201 through 14–204 as statutes merely waiving sovereign immunity in personnel matters by providing a funding mechanism for monetary awards, and not as affording state employees a right to be reclassified with back pay. We disagree.

Contrary to the position taken by the Comptroller, §§ 14–201 through 14–204 were specifically designed to provide an alternative in situations where an agency cannot afford to reclassify its employees with back pay. Sections 14–201 through 14–204 expressly direct that if sufficient money is unavailable to satisfy an award, the affected agency shall report the award to the Comptroller and the Comptroller shall report the award to the Governor. Thereafter, payment of the award is dependent upon the money being appropriated by the General Assembly. If the General Assembly appropriates the necessary funds, "the Comptroller shall authorize payment of all outstanding awards...." The statutory procedure is couched in mandatory language. *See, e.g., Prince George's County v. Vieira*, 340 Md. 651, 660, 667 A.2d 898, 902 (1995) ("It is significant that the Legislature chose to use the word, 'shall.' [This is] ... a direct indication that the Legislature directed that certain conduct is *required* "); *Ward v. Dept. of Pub. Saf. & Cor. Services*, 339 Md. 343, 352, 663 A.2d 66, 70 (1995) ("By ... using the word 'shall,' the regulation makes these disciplinary sanctions mandatory"); *In re Adoption No. A91–71A*, 334 Md. 538, 559 n. 5, 640 A.2d 1085, 1095 n. 5 (1994) ("It is a longstanding principle of statutory construction that the word 'shall' is mandatory").

In enacting §§ 14–201 through 14–204 of the State Personnel and Pensions Article, the General Assembly clearly envisioned a situation where an agency may lack the necessary funding to approve reclassification and back pay awards, and provided an alternative procedure to follow under those circumstances.

■  In arguing that he properly froze reclassification and back pay requests in accordance with Governor Schaefer's directive, the Comptroller relies upon *Workers' Compensation Comm'n v. Driver*, 336 Md. 105, 647 A.2d 96 (1994), *cert. denied*, 513 U.S. 1113, 115 S.Ct. 906, 130 L.Ed.2d 789 (1995); *Judy v. Schaefer*, 331 Md. 239, 627 A.2d 1039 (1993); *Md. Classified Employees v. Governor*, 325 Md. 19, 599 A.2d 91 (1991), *cert. denied*, 502 U.S. 1090, 112 S.Ct. 1160, 117 L.Ed.2d 407 (1992); and *Hopper v. Jones*, 178 Md. 429, 13 A.2d 621 (1940). All of these cases, however, involved a reduction of appropriations in accordance with express legislative authority. As such, they are readily distinguishable from the present case.

For example, in *Workers' Compensation Comm'n v. Driver*, *supra*, 336 Md. 105, 647 A.2d 96, two state employees argued that, despite the existence of a budget bill provision which expressly eliminated appropriations for their positions, they were entitled to the protection of the merit system rules applicable to laid-off agency employees. The employees relied on the fact that the budget bill provision was enacted at the recommendation of their agencies. In rejecting this argument, the Court reasoned that, despite any agency recommendations, "the decision to delete from the budget bill the appropriations for [the employees'] positions must be treated *wholly as the decision of the General Assembly* " (emphasis added). 336 Md. at 118, 647 A.2d at 103. Thus, the Court concluded that, because it was the General Assembly's clear intention to eliminate the employees' positions, they were not entitled to the protection of the merit system rules. In support of its conclusion in *Driver*, this Court relied upon *Hopper v. Jones, supra*, 178 Md. 429, 13 A.2d 621, where this Court similarly held that the lay-off statute is inapplicable when an enacted budget bill expressly deleted the appropriation for a particular employee's position.

*Md. Classified Employees v. Governor, supra*, 325 Md. 19, 599 A.2d 91, involved a challenge by state employees to an executive order which increased their work week from 35½ hours to 40 hours without providing them with additional

compensation. The employees argued that the order conflicted with a statute which provided that state employees working in excess of a "normal work week" should receive additional compensation. This Court rejected the employees' argument, holding that, because a "normal work week" was statutorily defined as between 35½ and 40 hours a week, the executive order was clearly authorized by the statute.

Finally, in *Judy v. Schaefer, supra,* 331 Md. 239, 627 A.2d 1039, this Court rejected a challenge by a group of recipients of public assistance to the Governor's authority to reduce legislative budget appropriations for certain public assistance programs. There, we held that the Governor's reduction of the appropriations was in accordance with a statute which specifically delegated such authority to the Governor. *Judy v. Schaefer, supra,* 331 Md. at 266, 627 A.2d at 1053.

The Comptroller's attempt to equate the situations in the above cases to that of the present case is unpersuasive. In this case, the Comptroller did not rely upon any express legislative authority when it froze employee reclassifications. Rather, the Comptroller relied upon a gubernatorial memorandum which directed the agency to institute a *hiring* freeze, which is clearly not the equivalent of a *reclassification* freeze.

The Court of Special Appeals correctly held that the ALJ's decision was based upon an error of law.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*