920 A.2d 467

Janet M. MILLER

v.

COMPTROLLER OF MARYLAND.

**No. 70 Sept. Term, 2006.**

Court of Appeals of Maryland.

April 10, 2007.

Lisa M. O'Mara Arnquist (Davis & Associates Law Offices, P.A., on brief), Towson, MD, for Petitioner.

Gerald Langbaum, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, and John K. Barry, Asst. Atty. Gen., on brief), Annapolis, MD, for Respondent.

Argued Before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER (Retired, Specially Assigned), JJ.

CATHELL, Judge.

Janet Miller, petitioner, seeks review of a decision rendered by the Court of Special Appeals, *Comptroller of Maryland v. Miller,* 169 Md.App. 321, 901 A.2d 229 (2006), in favor of the Comptroller of Maryland, respondent. In simple terms, this case involves whether an employee of the State is entitled to be paid as "work time" for the entire time spent driving from home directly to an out-of-regular workplace site, or whether the employee's normal commute time to the regular workplace is to be deducted from the time spent driving to the out-of-workplace site. To resolve this issue, we must examine the relationship between two regulatory schemes pertaining to State employees.[1]

---

1. The regulation, which is the focus of this dispute, is found in Title 17 of the Code of Maryland Regulations, COMAR, subtitle 04, "Personnel Services and Benefits," Chapter 11, "Leave," section 02, "Workweek, Overtime and Compensatory Time," subsection B, "Work Time." As relevant to the issues before this Court, COMAR 17.04.11.02B provides:
 "B. Work Time.
 (1) Work time includes time during which an employee:
 . . .
 (j) Travels between home and a work site other than the assigned office, in accordance with the Standard Travel Regulations under COMAR 23.02.01."
 The second regulation is COMAR 23.02.01.01, which provides in relevant part:
 "A. Unless otherwise provided by law, these regulations apply to all travel for official business undertaken by . . . employees. . . .
 . . .
 C. These regulations do not apply:

The problem in this case arises because the provision of the Code of Maryland Regulations (COMAR) that regulates the entitlement of "time" compensation requires that such compensation be awarded "in accordance" with the provisions of another regulatory scheme that regulates the entitlement to mileage compensation. Petitioner asserts that the time compensation statute should not be deemed to be qualified by the limitation language of the mileage compensation. Respondent argues otherwise, in the process pointing out certain absurd results that might occur if the Court were to adopt petitioner's position.[2]

In separate proceedings before an Administrative Law Judge (ALJ) and the Circuit Court for Baltimore City, petitioner's position prevailed. The Court of Special Appeals

---

. . .

(2) To State-owned, State-leased, or privately owned motor vehicles. Reimbursement to employees . . . who use State-owned, State-leased, or privately owned motor vehicles to conduct official business for the State is *within the jurisdiction of the State Fleet Administrator, Department of Budget and Fiscal Planning, and subject to policies issued by the Secretary of Budget and Fiscal Planning."* (Emphasis added.)

The applicable section of the provisions relating to the State Fleet Administrator, provides that:

"Reimbursement is based on the principle that the employee should be reimbursed for all official business mileage accumulated in a private vehicle which is beyond the normal round trip mileage incurred from the employee's home to the permanently assigned office/work station and back home again.

(1) "A State employee who leaves home to conduct business without stopping at the assigned office *may be reimbursed for all mileage directly connected with the business trip, which is in excess of the commute miles normally traveled, i.e.,* total official miles driven minus normal daily commute miles. In this situation, the driver has not driven his normal daily commute and therefore must subtract it from the total official miles driven."

State of Maryland Department of Budget and Management Division of Policy Analysis, *State Vehicle Fleet Policies and Procedures,* § 5.01.05 (emphasis added) (Section 5.01.05 appears to be misnumbered. There are four subparagraphs in that section. There are two "(1)s," a "(2)," and a "(4)." The present matter only concerns what should be, sequentially, "(2)," but in reality is the second "(1).").

**2.** Neither party has challenged before this Court the enactment of the various regulations at issue. Their validity is not at issue in this case.

reversed. We granted certiorari. *Miller v. Comptroller*, 395 Md. 56, 909 A.2d 259 (2006). Before this Court, petitioner presents two questions:

"I. Does COMAR 17.04.11.02B(1)(j) entitle employees to compensation for all time spen[t] traveling between home and a work site other than the assigned office?

"II. Does the law require that Petitioner['s] remedy be limited to compensation for 20 days prior to the filing of her grievance?"

We answer no to the first question, yes to the second and, in so doing, affirm the judgment of the Court of Special Appeals.

## I. Procedural History

Petitioner's job in the Comptroller's office, Financial Compliance Officer, required her to conduct audits at field locations going directly to remote locations from her home. At the time petitioner began working in that office, the Comptroller's policy was that an employee who was required to drive directly to a remote work site from her home was entitled to time compensation [3] for only that period of time that exceeded her normal commute time by thirty minutes.

Approximately two years after she began her employment, she met with a representative of the Maryland Classified Employees Association who informed her that the Comptroller was required to pay her for the time from when she left her home, until she arrived at a remote audit location. Petitioner then filed a grievance with the Comptroller in which she sought payment for her time from home to the remote audit location. A decision was issued in the first step of the grievance process which authorized compensation for all travel time *in excess of petitioner's normal commute time*, but the period of such compensation was limited to commutes taking place within a 30 day period prior to the filing of the griev-

---

**3.** As far as we know, the time compensation at issue in this case involves financial compensation, or not, for the time expended. We need not address time for time compensation in this case. They may, or may not, be the same.

ance.[4] Petitioner appealed that first-step decision, contending that she should be entitled to compensation for the entire period of her travel to a remote site and not just the period of time in excess of her normal commute. She also challenged the 30 day limitation.

The decision in the second-step appeal was rendered by a Deputy Comptroller who affirmed the first-step decision except that he reduced the 30 day period to 20 days in order to comply with Maryland Code (1993, 2004 Repl.Vol.), § 12–203(b) of the State Personnel and Pensions Article.[5] In affirming the commute-time issue, the Deputy Comptroller recognized the interrelationship between the two regulations at issue here and quoted with approval the finding of the Director of the Compliance Division:

" 'I believe that COMAR 17.04.11.02B(1)(j), incorporating the Standard Travel Regulations, is intending to apply the quoted mileage reimbursement concept in determining whether an employee is on work time or commute time. Applying that concept to this situation, for those days when Ms. Miller does not travel to her assigned office, she would properly be viewed as being on work time for all time directly connected with the business trip, in excess of her normal commute time.' "

Petitioner then filed a third-step appeal to the Secretary of Budget and Management, who delegated the case to the Office of Administrative Hearings. Petitioner's position appeared to

---

**4.** At approximately the same time, the Comptroller formally changed the policy, eliminating the compensation condition that limited compensation to periods of time in excess of thirty minutes of an employee's normal commute. The new policy permitted compensation for any such period that was in excess of normal commute times.

**5.** Section 12–203, in relevant part, provides:

"(b) *Time limitations.*—A grievance procedure must be initiated by an employee within 20 days after:

(1) the occurrence of the alleged act that is the basis of the grievance;

or

(2) the employee first knew of or reasonably should have known of the alleged act that is the basis of the grievance."

be that she was entitled to financial time compensation for every minute of time she was driving directly from her home to a remote work site, even if the commute time to the remote site was less than her normal commute time.[6] The Comptroller argued that adopting petitioner's position on this point could lead to absurd results. Petitioner also asserted that she was entitled to back compensatory pay despite the limitation of the 20 day period that had been one aspect of the Deputy Comptroller's decision. Both sides, with an important exception, then proffered testimony with respect to their positions to the Administrative Law Judge (ALJ). The exception was that petitioner chose not to put on evidence of the actual hours for which she contended she was entitled to compensation.[7]

On the primary issue, the ALJ decided on behalf of petitioner and against the Comptroller. In pertinent part, the ALJ opined:

"The Board of Public Work's Standard Travel Regulations apply to all executive branch State employees. COMAR 23.02.01.02B(14) provides as follows:

'(14) "Travel status" means the condition of a State employee while traveling on State business. An employee is not in travel status while commuting from home to the employee's assigned office, regardless of the length of time of that commute.'

Thus, by promulgated regulation, it is the policy of all executive agencies in the State (unless otherwise exempted) that an employee traveling from home to a field site, and

---

**6.** By this point in the proceedings, the Deputy Comptroller had brought the pre-grievance period from 30 days down to 20 days in order to comply with the statute mentioned, *supra.* Additionally, the Office of the Comptroller had conceded that its former policy of not compensating for any time until an employee had exceeded the period of his normal commute by more than 30 minutes was incorrect and had changed the policy.

**7.** Apparently, petitioner had elected to address the issue of the actual entitlement after a ruling by the ALJ, if that ruling was in her favor, by then submitting time sheets and the like to the Office of the Comptroller or other appropriate agency. This lack of evidence would impact one aspect of the ALJ's decision.

not to the employee's assigned office, is on 'work time' and in 'travel status.' An employee is to be paid or compensated for 'work time.' When traveling to a field site, an employee is working for the State, 'on the clock' so to speak, from the time the employee leaves the residence or the place from which the normal commute to the assigned office would begin.

. . .

"With regard to reimbursing travel time, the Agency currently subtracts out the estimated, round trip travel time to the assigned office on those days when an employee does not commute to the employee's assigned office.

"There is no direct legal authority to allow the agency to deduct from an employee compensation for the work time while on travel status.... I am not persuaded by the agency's argument on that point. I conclude that [petitioner] has met her burdens to show that the Agency misapplied the statewide policy in formulating its own travel time policy.

. . .

"[Petitioner] offered no credible evidence regarding the calculation of uncompensated work hours...." (Citations omitted.)

Ultimately, however, the ALJ dismissed the grievance, finding:

"I conclude, as a matter of law, that [petitioner] demonstrated that the Agency's revised travel time policy did not conform to law and regulation. I further conclude, however, that [petitioner] did not meet her burdens with regard to demonstrating that she is entitled to compensation for certain, uncompensated work time." (Citations omitted.)

 Both parties sought judicial review. The Circuit Court agreed with the ALJ that the Comptrollers revised travel policy was not supported by law. That court, however, remanded the case back to the Office of Administrative Hearings for a further hearing, presumably in order for petitioner to present evidence before an ALJ to establish what compen-

sation she was due. The Comptroller appealed to the Court of Special Appeals and that court reversed the decision of the Circuit Court and the decision of the ALJ.[8]

## II. Standard of Review

In *Kane v. Board of Appeals of Prince George's County*, we recently noted that:

> " ' "We review an administrative agency's decision under the same statutory standards as the Circuit Court." ' *Annapolis Market Place, L.L.C. v. Parker*, 369 Md. 689, 703, 802 A.2d 1029, 1037 (2002) (quoting *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.*, 369 Md. 439, 449–52, 800 A.2d 768 (2002)). In *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 67–69, 729 A.2d 376, 380–81 (1999), Judge Eldridge, writing for the Court, explained the standard of review for administrative agency decisions:
>
> > ' "A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226, 230 (1994)"; it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law. *United Parcel*, 336 Md. at 577, 650 A.2d at 230." ' "

*Kane*, 390 Md. 145, 159, 887 A.2d 1060, 1068 (2005). When reviewing agency decisions of law, such as the meaning of "full back pay" in § 11–110(d)(1)(iii) of the State Personnel and Pensions Article, we:

> "[C]onduct[ed] a *de novo* review of the ALJ's legal conclusion that benefits are not included in 'full back pay' as the question is one of statutory interpretation and, therefore, a purely legal inquiry. *Schwartz v. Dep't of Natural Res.*, 385 Md. 534, 554, 870 A.2d 168, 180 (2005); *Charles County Dep't of Soc. Servs. v. Vann*, 382 Md. 286, 295, 855 A.2d 313,

---

**8.** Generally, in such procedural circumstances, it is the ALJ's decision that is reviewed on appeal.

319 (2004); *Spencer v. Bd. of Pharmacy*, 380 Md. 515, 528–29, 846 A.2d 341, 348–49 (2004); *Coleman v. Anne Arundel County Police Dep't*, 369 Md. 108, 121, 797 A.2d 770, 778 (2002)."

*Reier v. State Dept. of Assessments and Taxation*, 397 Md. 2, 915 A.2d 970 (2007) (No. 29, September Term, 2006).

■ With respect to the distinction between the standard of review used for agency findings of fact, which we *are not* asked to review herein,[9] and agency conclusions of law, which we *are* asked to review, we have said:

" 'Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission*, 343 Md. 681, 696–697, 684 A.2d 804, 811–12 (1996), and cases there cited; *McCullough v. Wittner*, 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ('The interpretation of a statute by those officials charged with administering the statute is ... entitled to weight'). Furthermore, the expertise of the agency in its own field should be respected.' "

*Maryland Aviation Admin. v. Noland*, 386 Md. 556, 572, 873 A.2d 1145, 1154–55 (2005) (footnote omitted). In *Schwartz v. Maryland Depar't of Natural Resources*, 385 Md. 534, 870

---

9. There is no dispute of fact in the present case that is pertinent to our present inquiry. The issues before this Court involve pure questions of law. Moreover, we have been directed to no prior agency, or ALJ decisions, construing the statutes at issue here and their relationship with each other. There appears to be no longstanding, or any prior, position at the administrative level in respect to these statutes, thus, this appears to be a case of first impression. As such, in the present case, the decision of the agency below is owed less deference then that owed to longstanding positions of administrative bodies.

In cases such as that here presented, where the delegated ALJ takes a position exactly opposite of the position directly taken by the Agency, an issue can also arise as to what entity does a court owe deference (if any is due). This is a determination that will ultimately need to be decided. In light of our decision, it need not be done in the present case.

A.2d 168 (2005), we more specifically addressed the deference due administrative decisions, depending on whether the issue was factual or legal and we described the lesser degree of deference due by courts of legal decisions of administrative entities:

> "With respect to an agency's conclusions of law, we have often stated that a court reviews *de novo* for correctness. We frequently give weight to an agency's experience in interpretation of a statute that it administers, but it is always within our prerogative to determine whether an agency's conclusions of law are correct, and to remedy them if wrong."

*Schwartz*, 385 Md. at 554, 870 A.2d at 180 (citations omitted). See also *Christopher v. Montgomery County Department of Health and Human Services*, 381 Md. 188, 198, 849 A.2d 46, 52 (2004) ("Determining whether an agency's 'conclusions of law' are correct is always, on judicial review, the court's prerogative, although we ordinarily respect the agency's expertise and give weight to its interpretation of a statute that it administers. Of course, even though an agency's interpretation of a statute is often persuasive, 'the reviewing court must apply the law as it understands it to be.' " (citations omitted)).

### III. Discussion

#### A. Compensation for Commuting to a Non–Regular Work Site.

■ This case requires us to interpret the rules of an agency of this State. We stated in *Maryland Com'n on Human Relations v. Bethlehem Steel Corp.*, 295 Md. 586, 592–93, 457 A.2d 1146, 1149 (1983), that "the interpretation of an agency rule is governed by the same principles that govern the interpretation of a Statute." We have often stated the rules of statutory construction:

> " 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. *Fish Market v. G.A.A.*, 337 Md. 1, 8, 650 A.2d 705 (1994). *See also Jones v. State*, 336 Md. 255, 260, 647 A.2d 1204

(1994); *Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537 (1994); *Rose v. Fox Pool,* 335 Md. 351, 358, 643 A.2d 906 (1994). The first step in determining legislative intent is to look at the statutory language and '[i]f the words of the statute, construed according to their common and every-day meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written.' *Jones, supra,* 336 Md. at 261, 647 A.2d [ ] [at 1206]. *See also Parrison, supra,* 335 Md. at 559, 644 A.2d [ ] [at 539]; *Rose, supra,* 335 Md. at 359, 643 A.2d [ ] [at 909]; *Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870[, 880] (1994).'

*See also Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997) (noting that our goal is to give statutes their 'most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used'); *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112, (1994) (stating that we will seek to avoid statutory constructions that are 'illogical, unreasonable, or inconsistent with common sense')."

*Rockwood Casualty Ins. Co. v. Uninsured Employers' Fund,* 385 Md. 99, 108–09, 867 A.2d 1026, 1031 (2005) (quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995)).

With these principles of construction guiding us, we turn to Judge Hollander's well-reasoned opinion where she explained the Court of Specials Appeals' position on the commute-time issue we address today:

"We agree with appellant [the Comptroller of Maryland] that the ALJ's conclusion is inconsistent with the plain meaning of the regulations. Therefore, the ALJ's decision is 'premised on an erroneous conclusion of law.' . . .

"COMAR 17.04.11.02B([1])(j) plainly defines 'work time' as the time during which an employee '[t]ravels between home and a work site other than the assigned office, in accordance with the Standard Travel Regulations under COMAR 23.02.01.' . . . However, the Standard Travel Regulations under COMAR 23.02.01.01(c)(2) provide: 'Reim-

bursement to employees ... who use State-owned, State-leased or privately owned motor vehicles to conduct official business for the State is within the jurisdiction of the State Fleet Administrator, Department of Budget and Fiscal Planning [now Department of Budget and Management "DBM"] ... *and subject to policies issued by the Secretary ....*' (Emphasis added.)

"We agree with the Comptroller that it is[:]

'[C]lear what the "plain language" of COMAR 17.04.11.02B([1])(j) both does and does not do. It does *not* provide that the "entire" home to remote site commute constitutes work time. The language of the regulations does require, by its incorporation by reference of the Standard Travel Regulations, resort to the [S]tate [F]leet [P]olicies to determine what is to be considered work time.'

. . .

"The regulations set out in the 'State Vehicle Fleet Policies and Procedures' manual are incorporated by reference into COMAR 17.04.11.02B([1])(j). To conclude otherwise would defeat the 'ordinary and natural meaning' of the words of the statute. . . .

. . .

"The Secretary of DBM, who administers both work time and travel reimbursement, has chosen to apply to travel time the policy applicable for mileage, i.e., awarding compensation for travel time minus normal commuting time."

*Miller,* 169 Md.App. at 348–51, 901 A.2d at 245–46.

We agree. For us to adopt petitioner's position, would require us to read, "[i]n accordance with the Standard Travel Regulations under COMAR 23.02.01[,]" out of the regulation. The only logical interpretation of that language, used in this context, is that the regulation contemplates the application of the requirements of the Standard Travel Regulations. There is simply no other meaning that could apply under these circumstances.

Additionally, Judge Hollander pointed out below:

"Under [petitioner's] analysis, an employee assigned to a remote work site that requires less travel time than the normal, daily commute would have a shorter work day, yet earn compensation in excess of a full day's pay. Compensating employees for their entire travel time to a remote work site, without consideration of regular commute time, would lead to unjust enrichment of the employee, who would ordinarily have spent a portion of that time traveling to the regular work site. Commute time is not work time, and an employee who is on travel status is not entitled to compensation for either the mileage or the time that the employee regularly spends to commute. We decline to endorse a facially absurd result that is blatantly unfair to the taxpayers and results in a windfall to the employee."

*Miller,* 169 Md.App. at 352, 901 A.2d at 247. We too decline to endorse a result that would require employees to be paid for non-work time just because they were at a remote work site when they would not be entitled to be paid for non-work time if they were assigned and traveling to their regular work site. Such a result is clearly illogical and absurd. The only logical interpretation for the inclusion in the regulation at issue here of the requirement that the Standard Travel Regulations apply, was to make the process of mileage and time compensation consistent. We affirm the Court of Special Appeals on the first issue presented.

### B. Twenty Day Limitation on Filing of Grievances.

■ There is no authority for petitioner's claim, by way of the grievance process, for an award of any compensation claimed prior to 20 days from the filing of her grievance. Petitioner is entitled to be compensated as provided in Deputy Comptroller Cordi's November 12, 2003, "Management Decision." In order to comply with § 12–303(b) of the State Personnel and Pensions Article, Deputy Comptroller Cordi correctly changed the Comptroller's policy to allow a grievant to recover for acts occurring within 20 days prior to the filing of the grievance (as opposed to the previous, and incorrect, 30 day limitation). Thus, the Deputy Comptroller's decision cor-

rectly allowed petitioner to be compensated for all acts occurring within the 20 days prior to her filing a grievance on August 7, 2003. We affirm the Court of Special Appeals on this second question as well.

## IV. Conclusion

For the foregoing reasons, we hold that COMAR 17.04.11.02B(1)(j) does not entitle employees to compensation for all time spent traveling between home and a work site other than their assigned office and that § 12–203(b) of the State Personnel and Pensions Article requires a remedy to be limited to compensation for claims existing within 20 days prior to the initiation of a grievance.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

BATTAGLIA, J., files a dissenting opinion joined by HARRELL, J.

Dissenting Opinion by BATTAGLIA, J., which HARRELL, J., joins.

I respectfully dissent.

The crux of the present case requires us to determine whether a State employee is entitled to be paid for the time spent driving from home to a work site other than the assigned workplace. The majority holds that an employee is not entitled to be paid for the entire commute, but only for the amount of time exceeding the employee's normal commute. Additionally, the majority finds that an employee seeking compensation for that time would only be entitled to compensation for acts occurring twenty days prior to the filing of the grievance.

### A.

In the present case, the Administrative Law Judge determined that under COMAR 17.04.11.02 B(1)(j), an employee is

to be compensated for "work time" when traveling between home and a work site other than the assigned office:

No statute directly addresses how executive branch agencies are to define, and compensate employees for, "work time," "commute time" or "travel time." COMAR 17.04.11.02B provides . . . "Work time includes time during which an employee . . . [t]ravels between home and a work site other than the assigned office, in accordance with the Standard Travel Regulations under COMAR 23.02.01."

The Board of Public Work's Standard Travel Regulations apply to all executive branch State employees. COMAR 23.02.01.02B(14) provides as follows:

(14) "Travel status" means the condition of a State employee while traveling on State business. An employee is not in travel status while commuting from home to the employee's assigned office, regardless of the length of time of that commute.

Thus, by promulgated regulation, it is the policy of all executive agencies in the State (unless otherwise exempted) that an employee traveling from home to a field site, and not to the employee's assigned office, is on "work time" and in "travel status." An employee is to be paid or compensated for "work time." *See* COMAR 17.04.11.02B(1)(a) through (*l*) (list of instances that qualify as compensable work time). When traveling to a field site, an employee is working for the State, "on the clock" so to speak, from the time the employee leaves the residence or the place from which the normal commute to the assigned office would begin.

In the instant case, under its revised policy (Joint Ex. # 2) the Agency automatically, subtracts out (refuses to compensate for) time equal to an employee's normal, estimated commute time from home to the employee's assigned office and back home again when the employee travels to a field site. The Agency argues that the policy is analogous to the Private Mileage Reimbursement policy contained in the Department of Budget and Management's Vehicle Fleet policy (Joint Ex. # 3, p. 17–18). That policy is one in which mileage equal to an estimated, average round trip commute

to an assigned office is subtracted out of the total miles traveled to and from a field site, for purposes of reimbursing an employee who uses a personal automobile for travel to a field site. With regard to reimbursing travel time, the Agency currently subtracts out the estimated round trip travel time to the assigned office on those days when an employee does not commute to the employee's assigned office.

I conclude that the present policy of the Agency is arbitrary and inconsistent with law and regulations. There is no direct legal authority to allow the Agency to deduct from an employee compensation for the work time while on travel status. Moreover, if an employee has two or more residences, or two or more places from which an estimated commute to the assigned office begins, the automatic deduction policy becomes unmanageable. The Agency attempted to argue that if the travel time to a field site were shorter than the estimated commute time to the assigned office, then the employee would somehow be unjustly compensated and therefore that interpretation of the law and regulations would lead to an absurd result. I am not persuaded by the Agency's argument on that point. I conclude that [Ms. Miller] has met her burdens to show that the Agency misapplied the statewide policy in formulating its own travel time policy.

The Circuit Court for Baltimore City agreed with the Administrative Law Judge that the Comptroller's revised travel policy was not supported by law; the Circuit Court, however, remanded the case back to the Office of Administrative Hearings for further hearings to establish the appropriate remedy:

The Court has further reviewed the entire record and finds that there is substantial evidence to support the findings of the Administrative Law Judge that the Comptroller of Maryland (the Agency) misapplied the statewide policy in formulating its own travel policy (A.L.J. Decision at 8). The Court further finds that the Administrative Law Judge applied the correct principles of law to this matter. The Court, though, is not persuaded that the Comptroller of

Maryland, on these facts, should prevail in having the grievance denied and complaint dismissed by the Administrative Law Judge because of a finding that Petitioner Miller offered no credible evidence regarding the calculation of uncompensated work hours. Accordingly, this Court remands the case to the Administrative Law Judge for further proceedings to determine what, if any, compensation should be awarded Petitioner Miller for travel she undertook to any remote work site. Consistent with all other aspects of the decision of the Administrative Law Judge, Petitioner Miller's grievance will be granted.

The Court of Special Appeals disagreed with the Circuit Court and the Administrative Law Judge, and reversed; the majority affirms the Court of Special Appeals.

What the majority does is fail to apply the appropriate standard of review and it further confuses our jurisprudence, which we recently correctly explicated in *Maryland Aviation Administration v. Noland*, 386 Md. 556, 873 A.2d 1145 (2005):

"A court's role in reviewing an administrative agency adjudicatory decision is narrow; it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' "

"In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court ' "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.' "

"Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to 'substitute its judgment for the expertise of those persons

who constitute the administrative agency.' Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected."

*Id.* at 571–72, 873 A.2d at 1154–55, quoting *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376, 380–81 (1999) (citations omitted) (footnotes omitted) (emphasis in original). The majority concludes, however, that the Administrative Law Judge's decision in the present case permitting payment to the employee for the entire time she is at a remote work site and in transit thereto should be given only slight deference "at best." Op. at 282, 920 A.2d at 472–73. This is clearly wrong.

As pointed out in *Banks,* "[d]espite some unfortunate language that has crept into a few of our opinions, a 'court's task on review is *not* to "substitute its judgment for the expertise of those persons who constitute the administrative agency" '." 354 Md. at 68, 729 A.2d at 381 (footnote omitted). Judge Eldridge, writing for this Court in *Noland,* further agreed that such language is disapproved:

The "substituted judgment" language is misleading and inaccurate for several reasons. It suggests, with respect to legal issues, that no deference whatsoever is owed to the agency's decision. That is not the law. In an action for judicial review of an administrative agency's decision, the "court must review the agency's decision in the light most favorable to it," and "the agency's decision is prima facie correct and presumed valid." In addition, the agency's interpretations and applications of statutory or regulatory provisions "which the agency administers should ordinarily be given considerable weight by reviewing courts." *"Furthermore, the expertise of the agency in its own field should be respected."*

In the context of a determination by an agency or official in the Executive Branch o f the State Government, the term "judgment" is often used to mean the exercise of discretion, such as an official exercising "good judgment." Obviously a court may not substitute its exercise of discretion for that exercised by the Executive Branch agency or official.

\* \* \*

If there is a need to articulate a "standard" for judicial review of an agency's legal rulings, it is sufficient to say that a reviewing court must "determine if the administrative decision is premised upon an erroneous conclusion of law."

*Id.* at 573–74 n. 3, 873 A.2d at 1155–56 n. 3 (emphasis added) (citations omitted). He emphasized that "[i]f there is a need to articulate a 'standard' for judicial review of an agency's legal rulings, it is sufficient to say that a reviewing court must 'determine if the administrative decision is premised upon an erroneous conclusion of law.'" *Id.* The majority's assertion, then, that the deference, if any, is "slight . . . at best," does not accord with our jurisprudence.

### B.

The Administrative Law Judge determined that an employee is entitled to be compensated for the entire time she was traveling from home to a work site other than the assigned office. This is *not* an erroneous conclusion of law.

Section 17.04.11.02 of the Code of Maryland Regulations defines "Work Time" in the context of employee compensation:

A. Workweek.

(1) The regular workweek consists of 40 hours in a 7–day period.

\* \* \*

(7) Work in excess of an employee's regular workweek shall be compensated by overtime payments or compensatory time . . . .

B. Work Time.

(1) Work time includes time during which an employee: ·

(a) Is on duty, whether at the employee's principal job site or at a remote location as part of the State's telecommuting program;

\* \* \*

(j) Travels between home and a work site other than the assigned office, in accordance with the Standard Travel Regulations under COMAR 23.02.01. . . .

Clearly, then, work time includes time spent at a remote site and transit time, *in accordance with* the Standard Travel Regulations. The majority, nevertheless, refuses to apply those Standard Travel Regulations to the remote workplace commute, interpreting them to *not* apply because of the following language:

C. These regulations do not apply:

\* \* \*

(2) To State-owned, State-leased, or privately owned motor vehicles. Reimbursement to employees or officials who use State-owned, State-leased, or privately owned motor vehicles to conduct official business for the State is within the jurisdiction of the State Fleet Administrator, Department of Budget and Management, and subject to policies issued by the Secretary of Budget and Management.

COMAR 23.02.01.01 C. The majority interprets the "reimbursement" language in juxtaposition to the State Fleet Administrator language to deny State employees their just due.

This is the erroneous interpretation. Because we interpret language in regulations according to its "natural and ordinary meaning," *Ins. Comm'r v. Engelman*, 345 Md. 402, 692 A.2d 474, 485 (1997) ("The Commissioner's decision to promulgate and adopt COMAR §§ 09.30.94.09B and 09.30.94.11B without any reference to §§ 226(a), 230(b), and 242(e) belies [application of those sections to the regulation]."), citing *Messitte v. Colonial Mortgage Service Co.*, 287 Md. 289, 295–96, 411 A.2d 1051, 1054 (1980) (when words of an administrative regulation are unambiguous, they will be accorded their natural and ordinary meaning), "reimbursement" in C(2) clearly refers to

mileage reimbursement, not work commute time, as is revealed in the ordinary meaning of "reimbursement," connoting repayment of prior incurred expenses. *See* Black's Law Dictionary 1312 (8th ed. 2004) (defining "reimbursement," as "repayment"); Merriam–Webster's College Dictionary 1049 (11th ed. 2003) (defining "reimburse" as "to pay back to someone, to make restoration or payment of an equivalent to" and cites as an example the repayment of travel expenses); Random House Dictionary of the English Language 1625 (2nd ed. 1987) (defining "reimburse" as "to make payment to for expense or loss incurred," or "to pay back, refund, repay"). Thus, the exception in the Standard Travel Regulations by its terms only applies to reimbursement for travel expenses such as mileage, tolls, etc.

The applicable language of the Standard Travel Regulations is really:

A. In this chapter, the following terms have the meanings indicated.

B. Terms Defined.

\* \* \*

(7) "Official business" means the authorized duties performed by an employee or official of the State in the employee's or officer's defined capacity under the duties and responsibilities prescribed by the employment or office.

\* \* \*

(10) "Routine business travel" means authorized travel on a daily basis or periodic basis to a jobsite other than the employee's assigned office for official business.

\* \* \*

(14) "Travel status" means the condition of a State employee while traveling on State business. An employee is not in travel status while commuting from home to the employee's assigned office, regardless of the length of time of that commute.

COMAR 23.02.01.02. This language, because of the explicit reference to the Standard Travel Regulations in COMAR 17.04.11.02 B(1)(j), authorizes payment for the commute to and

from a remote workplace. Unlike the indirect "regulation skipping" incorporation utilized by the majority, incorporation by reference has only been permitted when the reference is direct and explicit. *See Adventist Healthcare Midatlantic, Inc. v. Suburban Hospital, Inc.*, 350 Md. 104, 107, 711 A.2d 158, 160 (1998) (stating that state health plan incorporated Specialized Health Care Services–Cardiac Surgery and Percutaneous Coronary Intervention Services with the language in COMAR 10.24.17.01: "Specialized Health Care Services–Cardiac Surgery and Percutaneous Coronary Intervention Services is incorporated by reference"); *JBG/Twinbrook Metro Ltd. P'ship v. Wheeler*, 346 Md. 601, 617, 697 A.2d 898, 907 (1997) (noting that language in COMAR 26.10.11.01—"[t]he Department incorporates by reference the provisions contained in 40 CFR §§ 280.90–280.116"—was sufficient to incorporate by reference); *Getson v. WM Bancorp*, 346 Md. 48, 57, 694 A.2d 961, 965 (1997) ("COMAR 14.09.04 reads: ... 'Those provisions of "Guides to the Evaluation of Permanent Impairment" (American Medical Association, 3rd ed. 1988) specified in Regulation .02 are incorporated by reference.' ").

The majority's conclusion directly contradicts the ordinary and plain language of COMAR 17.04.11.02 B(1)(j), supplanting the language "in accordance with the Standard Travel Regulations" with "in accordance with the State Vehicle Fleet Policies and Procedures." If the Department of Budget and Management intended to incorporate the State Vehicle Fleet Policies and Procedures, it would have do so with a direct and explicit reference to such policies. Furthermore, the majority's conclusion is dubious because the purpose of the State Vehicle Fleet Policies and Procedures is to "ensure the economical and efficient use of motor vehicles by units of the Executive Branch of State Government," State Vehicle Fleet Policies and Procedures, Section 1.01, not to regulate compensation to employees.[1] .

---

1. The majority's holding also may have ramifications, unfortunately, for the doctrines of vicarious liability and *respondeat superior*. By sanctioning the interpretation that some amount of time during which an

The majority contends that its holding is consistent with the principle that we seek to avoid regulatory interpretations that are illogical, unreasonable, or inconsistent with common sense; the majority "decline[s] to endorse a [clearly illogical and absurd] result that would require an employee to be paid for non-work time just because he or she was at a remote work site when they would not be entitled to be paid for non-work time if they were assigned and traveling to their regular work site," asserting that such a result would create a "windfall" for employees. Op. at 285, 920 A.2d at 474. The "windfall," however, would only occur when the length of the commute is less than the normal commute, which is not in issue in the instant case—it is a chimerical bête noire. On the other hand, no one should be forced to work beyond the normal work day without remuneration, such as what happened in the present case.

COMAR 17.04.11.02 B(1)(j), which permits compensation for commuting to and from a remote work site, clearly refers to the Standard Travel Regulations, and therefore we should give effect to it as written.

## C.

The grievance procedures pertaining to employees in the State Personnel Management System within the Executive Branch are codified in the State Personnel and Pensions

---

employee is traveling to a remote work site at the direction of her employer is not compensable, the majority appears to be saying that she would not be acting within her scope of employment. Our jurisprudence has supported the notion that a person traveling to a remote work site, other than her normal commute, is acting within the scope of employment, without eliminating the normal commute distance. *See Regal Laundry Co. v. A.S. Abell Co.*, 163 Md. 525, 163 A. 845 (1933). In *Regal Laundry Co.*, the contention was that a reporter for the Baltimore Sun was not acting in the scope of employment when he was traveling to Crisfield and back on Sunpaper business. We held that he was acting within the scope of his employment at the time of the accident when he was returning from his assignment to the Sunpaper's office in Baltimore. *Id.* at 533, 163 A. at 848. *See also Dhanraj v. Potomac Electric Power Co.*, 305 Md. 623, 631, 506 A.2d 224, 228 (1986) (recognizing that remote work place travel, if authorized by the employer, and in employee's vehicle as authorized by the employer, can be the basis for *respondeat superior* liability).

Article of the Maryland Code. Section 12–203 of the State Personnel and Pensions Article provides the relevant procedure for initiating an employment grievance:

(a) *Initiation.*—A grievant may initiate a grievance proceeding by filing a written grievance with the grievant's appointing authority. The grievant shall provide a copy of the grievance to the grievant's supervisor when the grievance is filed.

(b) *Time Limitations.* A grievance procedure must be initiated by an employee within 20 days after:

(1) the occurrence of the alleged act that is the basis of the grievance; or

(2) the employee first knew of or reasonably should have known of the alleged act that is the basis of the grievance.

Maryland Code (1993, 2004 Repl.Vol.), Section 12–203 of the State Personnel and Pensions Article. The remedies available to a successful grievant are enumerated under Section 12–402, which in part provides that

the remedies available to a grievant under this title are limited to the restoration of the rights, pay, status, or benefits that the grievant otherwise would have had if the contested policy, procedure, or regulation had been applied appropriately as determined by the final decision maker.

Maryland Code (1993, 2004 Repl.Vol.), Section 12–402 of the State Personnel and Pensions Article.

The majority's conclusion that a grievant's remedy is limited to recovery for acts occurring within the twenty days prior to the filing of the grievance, however, creates an unfounded connection between Sections 12–203 and 12–402. Section 12–303 delineates the requirement of when an individual must file a grievance, and Section 12–402 independently supplies the remedies available if the grievance is successful, without any twenty-day limitation. We have noted the independence of the state employee grievance system steps, remarking in *Walker v. Department of Human Resources,* 379 Md. 407, 842 A.2d 53 (2004):

With certain exceptions, §§ 12–201 through 12–205 create a three-step procedure for resolving grievances. Step 1, provided for in § 12–203, is the filing of a written grievance with the employee's "appointing authority" within 20 days after (1) the occurrence of the alleged act that is the basis of the grievance, or (2) the employee first knew or should have known of that act. Within 10 days after receiving the grievance, the appointing authority, through its designee, is required to confer with the employee and attempt to resolve the grievance, and within 10 days after that conference, to issue a written decision in which any relief permissible under § 12–402(a) may be awarded. That relief is limited to restoration of rights, pay, status, or benefits that the employee otherwise would have had if the contested policy, procedure, or regulation had been properly applied.

*Id.* at 410, 842 A.2d at 55. *See also Wilson v. Simms,* 380 Md. 206, 225, 844 A.2d 412, 424 (2004) ("In a grievance proceeding, an administrative law judge or final decision maker is authorized by Section 12–303 of the State Personnel and Pensions Article (1993, 1997 Repl.Vol.) to grant 'any appropriate remedy' available under Section 12–402(a).... Section 12–402(a) defines the remedies that may be provided to aggrieved state employees"); *Comptroller v. Nelson,* 345 Md. 706, 710 n. 6, 694 A.2d 468, 470 n. 6 (1997) (remarking that Section 12–402 provides the remedies available successful grievants under the state employee grievance system). The General Assembly could not have intended the remedies available under Section 12–402 to be restricted by Section 12–203's filing requirements when the grievant, such as Ms. Miller in this case, timely files her grievance.

By holding as it does, the majority adopts a view of "work time" unsupported by the express definition of the term and impermissibly restricts the statutorily prescribed remedies available to successful grievants. I disagree, and would reverse the judgment of the Court of Special Appeals.

Judge HARRELL has authorized me to state that he joins in this dissenting opinion.